## FLOWERS v. MAGOR CAR CORPORATION.
### No. 4898.

Circuit Court of Appeals, Third Circuit.
May 15, 1933.

Rehearing Denied June 23, 1933.

Eugene G. Mason, Charles L. Sturtevant, and Herbert H. Porter, all of Washington, D. C., for appellant.

Thomas G. Haight, of Jersey City, N. J., and Warren S. Orton, of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

This appeal is from a decree of the District Court dismissing a bill for infringement on the ground of invalidity of the patent. The claims in issue are 16 and 17 of letters patent No. 1,611,012, granted to Henry Fort Flowers, the plaintiff-appellant, for a "three-way dump motor truck body" or, as the invention was applied to the alleged infringing device, for a two-way dump railroad car of the gondola type.

Briefly, the thing achieved by the invention is to provide means whereby a dump car with hinged sides or doors will, when in transit, keep both doors securely closed and when tilted for unloading will automatically open the door on the downward side and hold closed the door on the upward side. Taking claim 17 as typical, the patent is for a combination

(a) "In a dump vehicle" (very old),

(b) "A frame" (equally old)

(c) "A dump body rockable selectively about fulcrums at opposite sides of said frame" (admittedly old),

(d) "Said fulcrums being spaced apart" (admittedly old) "so that"

(e) "Said dump body is supported in stable equilibrium thereon during normal transport" (in railroad cars, undesirably new),

(f) "A side door for said body at each side thereof, said doors being hinged to the body to fold down for opening" (old),

(g) "And independent devices for each door (old), automatically, independently and selectively controlling the opening and closing of the door through which dumping is to be effected throughout the entire movement thereof" (new),

(h) "Said body operating through said devices for holding the doors closed when said body is supported on both fulcrums for transport" (probably new).

If the patent consisted of this claim alone, that is, if the claim were read not in the light of the specification but exclusively in the light of its own disclosure, no one could tell how to practice the invention for nowhere does the claim disclose the independent automatic door opening and door closing device which is the center of the inventive combination and without which none of its other elements would work in holding and in dumping the load.

Even so, the plaintiff-patentee says the claim is valid because it discloses a basic invention and that anyone who employs all of its elements in any manner infringes.

In view of the art, which is full of dump cars of various types with various means for dumping, including many of the elements which the patentee quite lawfully appropriated, we cannot regard the invention as basic or the claims broader than the car which in the specification he disclosed as his

actual invention. That disclosure is of elements both old and new which of course make the combination new. But in looking for inventive novelty in the new combination we find it in the "independent devices" for holding both doors closed to prevent spilling the load when the car is in transit and for opening one door and holding closed the other when dumping. So the real question is narrowed down to the inventive quality of the door opening and door closing devices in conjunction, of course, with the old elements in the combination. This compels a study of the disclosure of the specification in the light of which the claims must be read, not with an inclination to restrict the invention to the precise structure disclosed but correctly to grasp the invention in order properly to measure the range of equivalents to which it is entitled.

▉▉ Above and across the chassis or frame of the car there are (in groups) two arms or bars whose length is greater than the breadth of the frame and about equal to the breadth of the body. One end of the first bar is pivoted on one side of the frame, positioned below; its other end is connected with or pivoted on one end of the second bar. The other end of the second bar is movably connected with the body of the car, positioned above, and operates on a pivot. Thus the frame, bars and body are connected. Yet in dumping movements they spread apart and come together somewhat like a pocket rule. As the body is tilted (by a power jack) for dumping on one side of the car or the other, the body turns or pivots on one fulcrum or the other. According to the side on which the body is tilted, one bar or both rise in the movement. So far this is Green (No. 425,607). Unless more is done the doors must be opened and closed manually. Flowers did more—not much in fact, yet a good deal in effect. He simply connected a short link between the fulcrum end of each bar and an extension from the lower side of each door with the result that when it is desired that both doors be closed for transport, that is, when neither fulcrum is used in dumping, the two bars lie together on the frame and thereby the doors are rigidly held closed; and when, for dumping, the body is tilted, one or both bars rise from the frame and the body rocks about the fulcrum at the end of one bar, which causes the short link connected therewith to move in a pre-arranged direction and open the door on that side (the downward side) "throughout the entire movement thereof." The short link connected between the other bar at its upward end and the extension from the upward door operates by inaction to keep the door closed. This is new and we think involves invention. Being new it is infringed when someone does the same thing in substantially the same way and thereby produces the same results. Yet if he produces the same results in a different way he does not infringe. Thus we reach the question whether the thing the defendant did was the equivalent of the invention and therefore was infringement, or, stated conversely, was it outside the range of equivalents and therefore not infringement?

As a matter of fact what happened was this: Before the patent issued, Flowers, now the patentee, built a sample car for operation on tracks. This car contained the structure of the patent in suit, that is, the body in transit rested on and in dumping rocked about fulcrums spaced apart on opposite sides of the frame and had control devices of short link connections between bars and doors. As in the patent, all elements from frame to body were connected. It was demonstrated on the New York Central Railway and eventually sent to the Oliver Iron Mining Company at Virginia, Minnesota. Officers of that company were favorably impressed with the idea of side door automatic control but evidently did not like the control device of the patentee's car. Thereupon they set their engineers to work out a device of a different kind. This resulted in plans and specifications under which the Oliver Company contracted for the purchase of forty cars to be built by the Magor Car Corporation, now the defendant. Feeling aggrieved, Flowers told the Oliver Company that he believed his patent when issued would have claims broad enough to cover the proposed construction. However, the parties composed their then present differences by agreeing that the Magor Car Corporation should build the forty cars without offense to the patent if the Oliver Company would order ten cars to be built by the Differential Steel Car Company, a licensee of Flowers. This was done. Thereafter, however, the Magor Car Corporation built under the same specifications cars for the New York Central Railway Company, which are the ones here in suit as infringements. And, oddly enough, Flowers, who was evidently impressed with the superior qualities of certain car parts of the Oliver construction and particularly of the Oliver door control device, never thereafter built cars with the fulcrum support and short link connections of the patent but always built them under the car designs and particularly with the door control device of the Oliver Company, claiming that,

in doing so, he still built under the patent because the Oliver construction and Oliver door control device were equivalents of the invention of his patent.

It is quite clear that elements c and d of claim 17 call for a dump body rigidly supported on a pair of fulcrums at opposite sides of the frame to maintain it in stable equilibrium during normal transport. That may be all right for a motor truck but it is not desirable, nor indeed is it permitted, in a railroad car which, when in transit, is subjected, over rough tracks and around curves, to a great variety of jolts, movements and strains. Knowing this, the designers constructed the alleged infringing railroad cars to avoid rigidity and to allow that flexibility which the rules of the Master Car Builders Association require. To do this they provided a massive central steel sill or girder on which the body rests when the car is quiet and on which it rocks when in movement. The frame has yokes or spuds at the sides which we shall term fulcrums, spaced apart for dumping purposes as in the patent, but they are positioned ⅛ to ⅜ of an inch below the sill so that the body never rests on both fulcrums at the same time. In consequence it is never supported by both fulcrums strictly "in stable equilibrium * * * during normal transport." In fact the body, when in transit, rests on the center sill and at times, according to its joggled movements, rests in part on the sill and in part on the right-hand or left-hand fulcrum. The defendant says that as the body can not and therefore does not rest upon both fulcrums it avoids infringement.

This difference between the supporting elements of the invention of the patent and the structure of the defendant impresses us as of little account. The difference, trivial mechanically, arises out of the use to which the invention is to be put, whether upon a motor car or a railroad car. If upon a railroad car it is confronted with a new problem, to be met under railroad rules. The difference appeals to us as unimportant in view of the fact that the slight flexibility required under these rules and permitted by a ⅛ inch clearance still seemingly insures enough "stable equilibrium" of the body to enable the door controls to hold the doors closed when in transport. We are not satisfied that flexibility measured by ⅛ inch clearance would disturb the bars and cause them to rise and set the door controls in operation. If this were the whole defense, we should find for the plaintiff.

But the main and serious difference between the construction of the car of the patent and that of the defendant is in the door control element which, after all, is the essence of the invention. The alleged infringing door control device consists of two parts. One is a strip of metal with an inwardly curved cam surface, being a projection from the lower part of the door. The other is a four-arm cam having a spring connection with the body, so positioned that one of the arms may contact with the frame and another with the door projection. When the car is either at rest or in transit, the end of the door projection and cam contact and lock. In this way the doors remain closed. When, however, power is applied and the body of the car is tilted upward for dumping, the control parts on the lower door unlock, the cam surface of the crab-claw projection from the lower door rides around the cam, part way through power applied from the moving body and part way by gravity, and the door, opening, follows the movement in reverse. In this dumping process the upper door stays closed by reason of the door and cam lock.

Now the defendant's cam door control device resembles, mechanically, the short link door control device of the patent not at all. The resemblance is only in results. The defendant's device is carried by the body; it is not connected with the frame. Like the body, it is separable from the frame. In a word, it is self-contained. It operates as well if the body were removed entirely from the frame; functions by an independent cam arrangement which has no resemblance physically or functionally to the short link connection of the patent; and what is much more important and really determinative of the whole question.

(a) The doors of the defendant's car are kept closed during transit not by the "stable equilibrium" of the body influencing the door control but by the inherent and independent operation of the door control device itself, and

(b) The opening "of the door through which the dumping is to be effected" is not controlled by the defendant's device "throughout the entire movement thereof."

We find the door control device in the defendant's car different from that of the patent in structure, position, relation to other elements of the combination and in principle of operation. The only resemblance is in results, which are open to anyone who can attain them in a different way. It follows that

we cannot find the car of the defendant, with its difference in door control which is the only element of the combination of the patent that is essentially new and really valuable, is the equivalent of the car of the patent.

Holding claims 16 and 17 of the patent in suit valid, we are constrained further to hold they are not infringed and, in consequence, the decree dismissing the bill must be affirmed.

### On Petition for Rehearing.

PER CURIAM.

The appellant by his petition for rehearing points to errors in three expressions in the opinion; one because it is without foundation in the record, and two because contrary to the evidence. The last two arose out of issues of fact and reflected our deliberate judgment which, on re-examination, we find no occasion to change. The first expression, however, concerns the practice of the plaintiff in building cars ostensibly under the patent after the Oliver design came out. Being impressed by the plaintiff's model of a railroad car, by the rules of the Master Car Builders' Association, by the testimony as to the resemblance between the contesting structures, and perhaps by an assertion of the defendant, repeatedly made, we said that the appellant, after seeing Oliver, never built cars (meaning railroad cars) with the fulcrum support and short-link connections of the patent. That may be wrong; yet again it may be right, for the appellant does not deny the truth of the statement, but says it is not supported by the record. Assuming he is right, the assailed statement concerns only an alleged practice of the plaintiff and was intended merely to make the issue of infringement stand out; it does not touch the decision on the issues of validity, scope of the claims, or infringement. We mention the matter in this brief opinion in order that the statement, right or wrong, shall have no influence upon litigation between the parties elsewhere.

The petition for rehearing is denied.