## SAMUEL M. LANGSTON CO. v. CONTINENTAL CONTAINER CORPORATION.

### No. 154.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1936.

Knight Brothers, of New York City (Kenneth S. Neal, of New York City, of counsel), for appellant.

Dean, Fairbank, Hirsch & Foster, of New York City (Clair W. Fairbank and S. A. Demma, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff is owner by assignment of the patent in suit which it is alleged has been infringed by the use by the defendant in the Eastern District of New York of a machine manufactured by George W. Swift, Jr., Inc. The manufacturer is defending this action.

The patent relates to a cutter with its operating and adjusting gears so designed that it will cut off varying lengths of moving material without causing buckling or tearing. The particular material upon which the defendant used the cutter claimed to infringe is corrugated paper board as it ran out of the machine in which it was made. Cutters which would do this were old when the patent was granted. They worked on the principle of having the cutting knife revolve in the direction in which the material traveled and at the instant the cut was made at the same speed or so near it that the material would withstand without harm such slight distortion as might take place.

It was accomplished by using a Reeves variable speed transmission which made it comparatively easy to adjust the cutter speed for making cuts of any one length. When, however, longer or shorter cuts were to be made, it was necessary to have the cutter revolve either slower or faster during part of the cycle and yet always enter the material, whose speed remained constant, at or so near the speed of the material that it would neither buckle nor be pulled apart. This problem was satisfactorily solved by Harbrecht in patent No. 1,039,124 granted to him September 24, 1912, by the use of elliptical gears which replaced the older method, of which it is unnecessary to say more than that it employed a trigger tripped by the material in combination with a clutch and brake mechanism which would slip some in operation and was too difficult to keep in adjustment to be entirely satisfactory. Harbrecht did away with this disadvantage, but, as his elliptical gears had to be angularly adjusted to vary the cutting length and were held in adjustment by bolts, the machine had to be stopped to change the cutting length. This required sometimes as much as twenty minutes, and always enough time was lost to make it desirable to have a means for changing from one cutting length to another without stopping the machine. Sieg set out to do that, and accomplished it by substituting for the bolts which held Harbrecht's elliptical gears in angular relation a form of differential gears which could be moved by a lever or wheel attached to a shaft while the machine was running to change not only the elliptical gear relationship but the variable transmission to adjust both length of cut and cutting speed by one operation. It was found, however, that, when the movement of the differential had changed the relation of the elliptical gears as desired, they would not remain exactly as set unless blocked. So it was necessary to stop the machine momentarily whenever the blocking piece was inserted or removed. Claim 2 shows sufficiently what was claimed so far as present issues are concerned. It reads:

"2. An apparatus for subdividing continuously advancing sheet material transversely into sections, including a cut-off mechanism having a movement at the instant of cutting substantially in the same direction as the path of movement of the material, means for varying the frequency of operation of said cut-off mechanism to vary the length of the sections being cut, and means operable while the machine is running for adjusting the relative speeds of the cut-off mechanism in its cycle, so as to maintain the traveling speed of the cut-off mechanism at the point of cutting operation substantially the same as the speed of sheet travel."

The plaintiff prevailed below on the theory that "the invention extended to every means by which the result could be obtained," and accordingly it was held that the defendant's machine infringed.

Before describing the defendant's mechanism, it is better to turn to a patent granted to Erik W. Mikaelson on September 5, 1933. It is No. 1,925,965 for a flying shear, and, as its cutting length cannot be varied without stopping the machine, it is in no material respect like the cutter of the patent in suit. It uses elliptical gears as did Harbrecht and Sieg, but differs from them in that the angular adjustment of those gears is obtained, instead of by using differential gears, by means of a worm screw acting on a worm wheel. When the worm screw is revolved, its worm wheel turns one of the elliptical gears as desired, and so the angular adjustment is made. This construction has the advantage of the worm screw and gear principle in keeping the adjustment when made constant without the need for any blocking.

The defendant's machine has the Mikaelson worm screw and wheel adjusting means, to which has been added a small electric motor with suitable electrical connections to permit it to be operated in either direction or stopped while it is itself whirling around with the cutter gear mechanism. It is also connected mechanically to the worm screw in such a way that by operating the motor when it is whirling with the worm screw and the cutter gears the screw may be turned either way. In this manner the cutting speed of the defendant's cut-off machine can be varied at will without loss of machine time. The operator does that simply by pushing electric buttons and uses another set of buttons to change the cutting length by adjusting the variable transmission.

It is apparent that the defendant has achieved the same result that Sieg did. Yet that is not decisive on the question

of infringement. It is impossible to secure a valid patent for a result alone. A patent will protect the means disclosed for obtaining the result, and denies to others the use of all equivalent means for doing the same thing. While the range of equivalents may widen somewhat in application where the invention is pioneer in character, the necessity for proving equivalency of means of accomplishment is equally present in every action like this. Were it not so, the urge for improvement which the patent law is designed to foster would itself be stifled. Always patent claims are to be read in the light of the specifications which limit them to what is substantially as described in order to avoid, when possible, holding them invalid because covering only some function, principle, or result which others are free to attain if they can in any substantially different way. Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868; Outlook Envelope Co. v. General Paper Goods Co. (C.C.A.) 239 F. 877; Electric R. R. Signal Co. v. Hall Railway Signal Co., 114 U.S. 87, 5 S.Ct. 1069, 29 L.Ed. 96.

So it is necessary for the appellee to show that the means employed by the defendant are substantially the same as those disclosed in the patent, and in this vital respect it has been faced with the impossible. Instead of following the patent and varying the cutting length and cutting speed by a manually operated control which does both at once and is mechanically so connected to the moving parts through differential gears that it need not, and does not, whirl with them, the defendant has first taken the Mikaelson worm screw and wheel adjusting means, open for use in so far as the patent in suit was concerned, and, second, has attached to it electric motive power for turning the adjusting screw in place of the hand power used in the patent as the actuating force. The inherent differences between the two methods of power supply are such that the defendant's will apply the necessary energy while itself whirling around with the parts upon which it operates, while the patentee's construction requires the power to be applied to adjust the gears through a member which can be grasped in the hand and so must be stationary except as it is moved by hand. One could never, by following the path of the patent to whatever point of refinement ingenuity permits, arrive at the method employed by the defendant, since it lies in an entirely different direction. Consequently, the adjusting mechanism used by the defendant to get practically the same result as can be obtained by using the patented cutter is a noninfringing substitute for the patented construction. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U.S. 399, 25 S.Ct. 697, 49 L.Ed. 1100; Imhaeuser v. Buerk, 101 U.S. 647, 25 L.Ed. 945; Oilgear Co. v. J. N. Lapointe (C.C.A.) 65 F.(2d) 380; Weil Pump Co. v. Chicago Pump Co. (C.C.A.) 74 F.(2d) 13; Hunt, Helm, Ferris & Co. v. C. A. Libbey Co. (C.C.A.) 283 F. 58.

As infringement has not been proved, we find it unnecessary to consider the question of validity.

Decree reversed.