## FLOWERS v. AUSTIN-WESTERN CO. et al.

### No. 8728.

Circuit Court of Appeals, Seventh Circuit.

June 12, 1945.

---

[5] Docket No. GF1-1007-P.

Eugene G. Mason, of Washington, D. C., and John J. Yowell and Charles L. Byron, both of Chicago, Ill., for appellant.

Arthur H. Boettcher, Cameron A. Whitsett, and Leo F. Tierney, all of Chicago, Ill. (Joseph L. McNab and Edward C. Grelle, both of Chicago, Ill., of counsel), for appellees.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff sued defendants claiming that by the construction of railway dump cars manufactured and sold by defendants, they, defendants, infringed three claims of Patent No. 1611012; seventeen claims of Patent No. 1972042; nine claims of Patent No. 1972043; five claims of Patent No. 1785678; and four claims of Patent No. 1813570. The defenses were invalidity, non-infringement, and that plaintiff did not come into court with clean hands in that the use of the patents was a violation of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. The District Court did not receive evidence in respect to whether the use of the patents was in violation of the Sherman Act, nor did it adjudicate the validity of the patents. It made findings of fact as a result of which it concluded that the defendants had not infringed any of the claims in suit and dismissed the complaint. From that decree plaintiff appeals.

The five patents involved are in the general field of those which relate to improvements in dump vehicles, particularly to the means for supporting the body and controlling mechanisms controlling the opening and closing of the side doors of the vehicle.

Plaintiff makes the point that the devices employed by defendant embody substantially the same mechanism, functioning in substantially the same manner to produce the same results; that the only difference between his dump car and the accused car is that the door operating mechanisms are at the *ends of the car* instead of under the

body of the car, and he contends that the mere change in location and form of the devices does not avoid infringement.

Of the five patents, Patent 012 was the first one granted. It was applied for on September 27, 1924, issued December 14, 1926. It is broader in scope than the other four patents. It relates to a dump vehicle and is illustrated in connection with a motor truck, although the claims are not thus limited. The thing achieved by the invention is to provide means whereby a dump car with hinged doors will, when in transit, keep both doors securely closed and when tilted for unloading will automatically open the door on the downward side and hold closed the door on the upward side. Representative claims describe plaintiff's device as follows:

"8. In a dump vehicle having an underframe and a body tiltable about fulcrums at opposite sides of the underframe, a door at each side of said body and pivotally supported thereby, and door operating devices for each of said doors having connections to the said body and being pivoted to said underframe substantially at the fulcrum on the side opposite said respective doors."

"17. In a dump vehicle, a frame, a dump body rockable selectively about fulcrums at opposite sides of said frame, said fulcrums being spaced apart so that said dump body is supported in stable equilibrium thereon during normal transport, a side door for said body at each side thereof, said doors being hinged to the body to fold down for opening, and independent devices for each door for automatically, independently and selectively controlling the opening and closing of the door through which dumping is to be effected, throughout the entire movement thereof, said body operating through said devices for holding the doors closed when said body is supported on both fulcrums for transport."

The specifications and drawings describe the structure as a dump vehicle which is supported on spaced fulcrums so that the load within the body portion of the vehicle will hold the body in stable equilibrium during transport, and which has door controlling devices which are independent of each other and which will operate independently, selectively and automatically to control the entire opening and closing movements of the door at the side at which dumping is to be effected when the body is tilted for dumping. This controlling mechanism for the opening and closing of the door con-

trols the entire movement of the door during the opening and closing thereof. The dump body includes a plurality of transverse stiffening frames which have downwardly extending gusset members at their ends. These gussets receive the pivots of the transverse bars and the pivots for the doors. A latching system is provided on each side of the sub-frame to engage the free ends of the bars, i.e., each latch system locks the free ends of the bars which are connected to the gusset plates at that side of the vehicle.

The sub-frame includes a plurality of transverse carrier bars or links which project on either side of the sub-frame, and have pivot eyes at the outer ends. The door actuating bars are pivotally mounted at alternate opposite sides of the vehicle at the eyes by means of pivot bolts which define the trunnions or fulcrums at opposite sides of the vehicle about which the body tilts. These bars extend transversely across the sub-frame and rest during the normal position of the dump body on pads and the sub-frame. At the free ends of the bars they are, respectively, and alternately pivotally mounted at points which are in alignment with the pivotal points, while the body is in the normal or transport position, but are independent thereof. At the extreme free ends of the bars they are pivoted to short links which in turn are connected to the side doors. As the body is tilted, the door opens by its own weight and the weight of the material contained in the body and gradually coming to bear against it in proportion as the body moves: the links may also exert a traction upon the depending bracket members on the door to pull it open. The door at the lower side of the tilted body is thus opened, while the door at the upper side is maintained closed; during transport and at all times while the body is in the normal horizontal position, each door controlling mechanism retains its respective side door closed.

The second patent 042 was originally applied for November 4, 1925, allowed September 7, 1933, renewed February 15, 1934, and issued August 28, 1934. It concerns the assembly and operation of dump vehicles for road and rail use; no new mode of operation is introduced. It is confined to adapting the superstructure of 012 by taking the type of body dumping and door control mechanism and mounting it on an underframe of the conventional railroad type, by providing for an underframe in-

cluding a center sill with laterally projecting brackets at opposite sides thereof, with fulcrum supports for the body carried by the brackets, and for power lifting mechanisms at opposite sides of the center line of the underframe. Plaintiff has treated the seventeen claims relied on in four groups as follows: (1) claims 13, 24, 28, 32, 33, 34, and 41; (2) claims 39, 40, and 42; (3) claims 23, 29, 30, 31, and 38; and (4) claims 35 and 37. All the claims in varying phraseology refer to operating devices controlling the opening of the door through which dumping is to be effected and for positively closing the door when the body is returned to transport position, and two of the claims relate to a detail of the power cylinders having to do with the trapping and controlled release of the air over the piston, when compressed air is admitted below it, for the purpose of cushioning the end of its upward movement. The claims in group two refer to fulcrum supports carried by the body and engaging the fulcrum supports on the underframe so as to prevent the body from accidental dumping during transport. The claims of group three refer to fulcrum members adapted to engage supporting fulcrums so that when the body is tilted for dumping, the torsional strain on the underframe is reduced. The claims of group four refer to fulcrum supports having supporting members contacting with the fulcrum supports during transport to prevent accidental dumping.

The third patent 043 applied for April 8, 1926, and issued August 28, 1934, is in the nature of an improvement upon that granted in patent 042. It substitutes cams for direct link connections. By this substitution it is claimed the patent discloses an improvement on the structure by introducing a lost motion connection in that the doors are under control at all times during their opening and are free to move toward a closed position if they strike an obstruction without interference. Claims 32, 42, 47, 48, 49, 50, 53, 54, and 55 are relied on.

The fourth patent 678 was filed April 8, 1926, issued December 16, 1930, on an application divisional filed May 25, 1928, from an application which resulted in patent 1972043. It eliminates the cams mentioned in patent 043 which are replaced by links. Plaintiff's expert witness testified that by the elimination of the cams and the substitution of the links, the effect is the same as in patent 043, and has a permissive lateral movement on the fulcrum supports. Claims 8, 9, 10, 11, and 12 are relied on.

The fifth patent 570 applied for July 10, 1926, issued July 7, 1931, also relates to door controlling mechanisms. It makes use of a slot-and-bolt connection instead of the cams of patent 043. The slot-and-bolt connections are provided so as to permit the dump door to cease its opening movement when it encounters an obstruction during the dumping action. Claims 2, 12, 13, and 25 are relied on.

An expert testifying for plaintiff described the patented structure and the operation of the accused car, and testified that the accused car performs substantially the same functions and accomplishes the same results as disclosed in the claims of the patents in issue, but the court found that the accused car did not embody mechanisms similar to and functioning the same way as those disclosed in the claims in suit and concluded that the accused car did not infringe the patents.

While defendants contend that all five of the patents are invalid because anticipated by previous patents, we believe that we need only to discuss the question of infringement.

■ To be sure, patents are not limited to the structure described for the invention may be embodied in various forms. Furthermore, except where form is of the essence of the invention, one device is an infringement of another if it performs substantially the same function in substantially the same way to obtain the same result, so that if two devices do the same work, in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape, and when one has achieved something new involving invention, it is infringed when some one does the same thing in substantially the same way and thereby produces the same result, but mere application of claim phraseology or a word by word correspondence is not alone enough to establish infringement, Grubman Engineering & Mfg. Co. v. Goldberger, 2 Cir., 47 F.2d 151, nor is similarity of result. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U.S. 399, 25 S.Ct. 697, 49 L.Ed. 1100. There must be real identity of means, operation, and result, Weil Pump Co. v. Chicago Pump Co., 7 Cir., 74 F.2d 13, and if one produces the same results in a different way he does not infringe. Flowers v. Magor Car Corp., 3 Cir., 65 F.2d 657.

In considering the question of infringement the claims must be read in the light of the invention disclosed. They cannot be given a construction broader than the actual teachings of the patents as shown by the drawings and specifications. Here the patents are in a field in which many have sown and in the prior art to which the patents relate, there were numerous structures disclosed by Letters Patent, disclosing railway cars with center sill underframes, with diverse means for supporting and firmly holding the body, and automatic controlling mechanisms controlling the opening and closing of doors, and for retaining the doors in proper position when the body is in its normal position, so arranged that when one door is unlocked for dumping, the opposite door is necessarily locked, and for lost motion connections in door mechanisms, such as telescoping links, cams, and pin and slot (slot and bolt) arrangements; thus it is clear that each of the patents is one of improvement on a combination of elements in prior use. In such a field the claims are not entitled to a broad and liberal construction, but on the contrary, the range of equivalents includes nothing not substantially identical with the means described in the patents, Blanc v. Curtis, 6 Cir., 119 F.2d 395, and Ottinger v. Ferro Stamping & Mfg. Co., 6 Cir., 59 F.2d 640, and the use of other known means, although equivalent in function, will be excluded.

The accused vehicle is a railway car underframe mounted on wheel trucks, with a longitudinally extending center, having laterally extending bolster brackets. These brackets are formed with sockets on each side, adapted to receive trunnions respectively mounted under the floor of the body. Along the length of the underframe and body are other laterally extending bolster brackets, having supplemental brackets with sockets cooperating with fulcrum members under the body floor, so that under transport condition the body rests on the inner fulcrums and is held in stable equilibrium against tilting. The body is provided with right and left-hand dump doors pivoted to the body to swing downwardly, so that the door becomes an extension of the body floor. When the body is tilted to the right, it swings on the right-hand trunnion until the associated trunnion bottoms in a socket and then swings on the associated trunnion. The same kind of operation takes place when the body tilts to the left.

On each vertical end wall of the body there is provided a pivot and on that pivot, for each door, there is mounted a lever. The lever at one end has a pin and slot connection with a link which extends toward the door and is pivoted to a bracket thereon. At its other end, the lever is pivoted to a link which extends downwardly and is there pivotally connected by way of a slot to a pin on the bracket, extending laterally from the center. Such a system of linkage is provided for each door. When the body is tilted to the right, the pivot moves to the right in an orbit, first about the right-hand trunnion and then about the associated trunnion, and the lever, held at its left end of the link, rotates to the left about the pivot; this brings the right-hand end of the lever towards the door and the latter is permitted to swing down by gravity about the pivot until the body reaches its full tilted position, when the door will occupy a position substantially in line with the floor of the body and is held there by the engagement of its tail piece with a portion of the body. If, in the tilting operation the opening door should encounter an obstacle to arrest its movement, the pin on the rotating lever moves to the right in the slot. On the return movement, the lever rotates to the left on the pivot, its pin engaging at the left-hand end of the slot in the link pulls the door closed. In transport, the linkages hold the door closed.

In the case here the patents disclose specific means for supporting the body and devices having connections to the body for automatically and independently controlling the opening and closing of the doors.

Defendants' expert testimony showed— and a visual examination of the exhibits confirmed the testimony—that the accused car has no door control members which carry body fulcrums; that it has no transverse control bars which are pivotally connected to the body co-axially with the fulcrum at one side of the car; that it has no members which remain in horizontal position over the frame during dumping to one side and rise with the body during dumping to the opposite side; that it has no combination body fulcrum and door control bars which are mounted under the floor of the body or which cooperate with rolling fulcrums to simultaneously move the body laterally during dumping, and that it has no door controlling devices which are mounted under the floor of the body; that the accused car's door controlling me-

chanism is separate and distinct from the body operatively mounted on the end walls of the body, rocking about a pivot in the center of the car, and activated by vertical links as the body is dumped without lateral movement, first about an inner fixed fulcrum and later about an outer fixed fulcrum, and which, during the dumping, does not hold the door closed, but when the body shifts from its inner fulcrum to its outer lower fulcrum, the control linkage of the upper door is released, and the door permissively remains closed by virtue of its own weight and the tilted position of the body.

In the field of dump vehicles with means for supporting the body and mechanisms controlling the opening and closing of the side doors, plaintiff was not a pioneer. He merely improved the form to accomplish the result. Defendants adopted another form essentially different. True, they achieved the same result, yet that is not decisive on the question of infringement. It is impossible to secure a valid patent for a result alone. A patent will protect the means disclosed for obtaining the result, and deny to others the use of all equivalent means for doing the same thing. While the range of equivalents may widen somewhat in application where the invention is pioneer in character, the necessity for proving equivalency of means of accomplishment is equally present in every action like this. Were it not so, the urge for improvement which the patent law is designed to foster would itself be stifled. Samuel M. Langston Co. v. Continental Container Corp., 2 Cir., 80 F.2d 847, 849. The means and operation of the accused car differ in principle, mechanical construction and arrangement of parts from the patented structure. There was not merely a colorable departure from the patented structure. It was a substantial departure. Under such circumstances when the prior art and all the evidence is examined for the purpose of ascertaining the breadth and characteristic features of the claims of the patents in suit, we think the trial court was justified in holding that the patented structure could not be extended so as to embrace the accused car, Duff v. Sterling Pump Co., 107 U.S. 636, 2 S.Ct. 487, 27 L.Ed. 517; Burroughs Adding Machine Co. v. Felt & Tarrant Mfg. Co., 7 Cir., 243 F. 861; and Weil Pump Co. v. Chicago Pump Co., 7 Cir., 74 F.2d 13; United States Rubber Co. v. General Tire & Rubber Co., 6 Cir., 128

F.2d 104, and since such a finding under the circumstances here appearing may not be disturbed, Galion Iron Works & Mfg. Co. v. Beckwith Machinery Co., 3 Cir., 105 F.2d 941, and Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587, the decree must be affirmed. It is so ordered.