**DUBUQUE AWNING & TENT COM-
PANY, Plaintiff,**

v.

**CANVAS PRODUCTS CORPORATION,
Defendant.**

No. 62–C–141.

United States District Court
E. D. Wisconsin.

July 14, 1965.

Motion for Reconsideration and Change
of Opinion Denied Oct. 27, 1965.

Arthur H. Seidel, Milwaukee, Wis.,
Richard L. Johnston, Daniel V. O'Keefe
and Herbert B. Keil, Chicago, Ill., of
counsel, for plaintiff.

Joseph P. House, Jr., and Robert E.
Clemency, Milwaukee, Wis., for defend-
ant.

GRUBB, District Judge.

This is an action for infringement of Claims 2 and 5 of United States Letters Patent 2,892,463, issued to C. P. Frommelt et al. on June 30, 1959, on an application filed May 27, 1954. Plaintiff, Dubuque Awning & Tent Company, an Iowa corporation located at Dubuque, Iowa, is the owner of the patent in suit, hereinafter referred to as the "Frommelt" patent. Defendant, Canvas Products Corporation, a Wisconsin corporation located at Fond du Lac, Wisconsin, is charged with willful and deliberate infringement by its manufacture and sale of a structure called the "Can-Pro Loading Dock Shelter." Plaintiff seeks injunctive relief, damages, costs, and reasonable attorneys' fees. The question of damages having been severed, trial was to the court on the issues of validity and infringement only.

Both parties have engaged in the manufacture and sale of awnings and products made from canvas for many years. Loading dock shields or shelters provide a protective enclosure between the loading dock of a warehouse or other building and rail cars or trucks. Plaintiff entered the loading dock shield business in 1954; defendant began in the late 1940's.

*Patent in Suit*

Frommelt patent relates to a loading dock shield adapted for mounting on a warehouse or other enclosure to provide a shield between the enclosure and a vehicle to and from which goods are being transferred. The objects of the claimed invention include the following: The provision of a shield to keep dirt, dust, and rain water out of a loading zone, the top of which shield terminates in a straight position on release, and which shield permits adaptation thereof for use with openings of various sizes and with clearances between buildings and vehicles of differing dimensions.

In issue in this action are Claims 2 and 5 of the Frommelt patent. Claim 2, which is more detailed, reads as follows (breakdown into lettered elements added):

"2. An extensible loading dock shield for mounting on a warehouse or the like in enclosing relation to a doorway thereof comprising

(a) an extensible frame;

(b) a cover mounted on said frame and adapted to be connected to said warehouse along the top, sides and bottom of said doorway to provide an enclosure projecting outwardly from the warehouse;

(c) toggle joint means connected to the upper portion of said frame and adapted to be connected to said warehouse for extending the upper portion of said frame;

(d) means for maintaining a spreading force on the toggle joint means sufficient to extend it and thereby the upper portion of said frame and the cover portion attached thereto from their fully retracted positions to their fully extended positions and then to continue to provide an extending force on them;

(e) extension means connected to the lower portion of said frame and adapted to be connected to said warehouse for extending the lower portion of said frame; and means for maintaining a force on said extension means sufficient to extend it and thereby the lower portion of said frame and the cover portion attached thereto from their fully retracted positions to their fully extended positions and then to continue to provide an extending force on them."

Claim 5 is substantially similar to Claim 2 but provides for optional structure omitting the bottom section of the cover.

Figures 1, 2, and 3 of the Frommelt patent drawings, illustrative of the claims in issue, are reproduced below.

June 30, 1959        C. P. FROMMELT ET AL        2,892,463
LOADING DOCK SHIELD

Filed May 27, 1954                                    2 Sheets—Sheet 1

FIG. 2

FIG. 1

FIG. 3

INVENTOR.
CYRIL P. FROMMELT
SYLVAN J. FROMMELT
BY Margall, Johnston,
Cook & Root
ATT'YS

The disclosure of the claims being couched in the term "means," resort is had to the specifications of the patent to identify the structure corresponding thereto. Section 112, Title 35 U.S.C.A.

The toggle joint means of element (c) of the claims in issue is described as follows:

" * * * toggle joint means are furnished for extending the shield, and the toggle joint means are adjustable to vary the slope of the top of the shield." Col. 2, lines 38–41.

" * * * Toggle joint means including one or more sets or groups of pivot arms are connected to the extensible frame and are also adapted to be connected to the warehouse, a part thereof being carried by the slide rods. The pivot arms are arranged to extend the frame and thus the shield, so that the top of the cover is straight from the warehouse to the vehicle. The pivot arms in each set are adjustably connected to each other to enable the top of the cover to extend horizontally or to be canted upwardly or downwardly from the warehouse as desired." Col. 2, lines 58–68.

"Connecting the front frame 14 and the warehouse 2 are a pair of like toggle joints 17, arranged vertically in the same manner along the sides of the doorway 5 and each having a knee 17a, one of the joints being illustrated in detail in Figure 2. Each toggle joint is composed of a fixed, rear or back pivot arm 18 and a vertically movable front pivot arm 19, each arm being illustrated as an angle iron. The fixed pivot arm 18 is pivotally connected to the frame 4 mounted on the warehouse by means of a fixed supporting pivot arm hinge 20 for the top or end 21 of the arm, the hinge being bolted or otherwise suitably fastened to the frame.

"The opposite, lower end 22 of the fixed pivot arm 18, which depends from the hinge 20, is pivotally connected to the movable pivot arm 19, intermediate the upper and lower ends 24 and 25, respectively, thereof by means of a pivot pin or bolt 23 passing through corresponding holes or openings in the arms and secured in place, as by means of a lock nut. The toggle joint 17 is formed by the pivot arm 18 and the upper portion, containing the upper end 24, of the movable pivot arm 19. The lower portion of the movable pivot arm acts as a means for transmitting force to the knee 17a of the toggle joint, an upward force on the lower portion tending to straighten the joint." Col. 3, lines 36–60.

" * * * The lower or bottom end 25 of the movable pivot arm 19 is pivotally connected to a sliding pivot arm hinge 29 which is carried by or mounted on a vertical pivot arm slide rod 30, for vertical reciprocation of the hinge on the slide rod and thus vertical movement of the movable pivot arm." Col. 4, lines 4–9.

" * * * When it is desired to use the shield, the cords 49 and 50 are released, and the action of the tension springs 32, exerting upwardly vertical forces on the movable pivot arms 19, causes the movable pivot arms to move the upper supporting bar 15 and the cover 6 attached thereto upwardly. Through the action of the fixed pivot arm 18, the movable pivot arm is also caused to move outwardly, and the supporting bar 15 is projected upwardly and outwardly under these forces until it has reached a position where the top section 7 of the cover is straight or taut." Col. 5, lines 48–58.

The means for maintaining a spreading force on the toggle joint means, claimed in element (d) of the claims in issue, is identified as "Resilient means, such as tension springs." Col. 2, line 69. Each individual spring is connected at one end to sliding hinge (29). It maintains an upward vertical force on said hinge and thus on the movable pivot arm (19) which is urged outwardly and

upwardly to extend the frame and straighten the top of the cover.

The disclosure of element (e), the lower extension means, is particularized as follows:

"* * * extension arms are also provided and connected to the frame at its lower portion, for extending the bottom of the shield. The extension arms may be similar to parts of the toggle joint means and are carried by the same or like slide rods. Resilient means are also provided for maintaining downward vertical forces on the extension arms, so that they are urged downwardly and outwardly to extend the frame and straighten the bottom of the cover." Col. 3, lines 3–11.

"Where the extension arms 42, acting to extend the bottom section 10 of the cover 6, and associated structure are provided, the tension springs 46 act to move the arms downwardly. When the upper and lower supporting bars 15 and 16 are connected to each other in the extensible frame 14, the outward movement imparted to the upper bar serves to move the lower bar outwardly at the same time, so that the force of the tension springs 46 acts through the extension arms and the lower bar to straighten the lower section 10. In any event, with the cover 6 completely encircling the doorway, being formed in one piece or having its sections joined to each other, the restrictive nature of the cover directs the extension arms 42 outwardly to straighten the bottom section 10." Col. 5, lines 69–75; Col. 6, lines 1–7.

A toggle joint is a principal feature of the disclosure of the Frommelt patent. This is defined in Webster's New International Dictionary (2d ed. 1956, Unabridged) as follows:

"toggle joint. *Mach.* a A device consisting of two bars jointed together end to end but not in line, so that when a force is applied to the knee tending to straighten the arrangement, the parts abutting or jointed to the ends of the bars will experience an end-wise pressure which increases indefinitely as the bars approach a straight-line position. It is used in stone crushers, the double wagon brake, some kinds of presses, etc.

"b A joint consisting of a bar pivoted at its middle point to a supporting bar so that the former may be turned to any position and hence be used for lifting tanks or the like by inserting the bar through a constricted opening and allowing it to assume a position normal to the supporting bar."

*Validity*

Defendant claims invalidity of the Frommelt patent for alleged anticipation of the subject matter of the claims in issue in the same over-all combination of all elements there defined by D'Azzo patent 2,840,091, issued on June 24, 1958, and D'Azzo publication, Catalog No. 52, indicating a publication date of 1953. Further, invalidity is claimed to lie in the obviousness or lack of invention of the subject matter in light of the combinations of the D'Azzo references, of the Eshnauer patent 2,567,995 considered together with the Fogh patent 2,050,835, and of defendant's Giddings and Lewis installations together with the D'Azzo patent.

The Eshnauer and Fogh patents are cited references in the patent in suit. Defendant contends that the presumption of validity of the Frommelt patent nevertheless is overcome since the best references, that is, the D'Azzo patent and publication and the Giddings and Lewis installations, were not considered by the patent office and since there is no evidence that the examiner appreciated the significance of the Eshnauer patent.

*Anticipation*

The D'Azzo patent is for a "Non-Sagging Loading Dock Canopy Frame." It discloses a foldable shield having collapsible twin side frames supported by inner

end toggles which are indirectly connected to the front of the frame of the shield by lazy tong or scissor linkages. The toggles aid in maintaining the front frame in full side engagement with a freight car.

Defendant contends that the operative weight of the D'Azzo structure relative to the pivot point of the toggle joint is to be deemed the mechanical equivalent of the spreading force means illustrated by the tension spring in the Frommelt patent.

In Frommelt, the spring exerts a force on the toggle joint sufficient to extend it and thereby the upper portion of the frame and attached cover from a fully retracted to a fully extended position, and then continues to provide an extending force thereon. In D'Azzo, the toggle lazy tong linkage ends in an arm which is connected to the front portion of the frame. In retracted position the arm tilts upward, raising the front portion of the frame. On release, the frame drops under gravity and rotates this arm forward and urges it outward. Rotation of the arm, in turn, exerts an extending force on the toggle joint which then acts to maintain the frame in extended position.

Thus it appears that the operative weight in D'Azzo opens the structure and thereby extends the toggle joint, whereas the spring in Frommelt spreads the toggle joint and thereby extends the shield. Neither the toggle mechanism nor the spreading force means perform functions in D'Azzo substantially similar to those performed in Frommelt. They may not be deemed mechanical equivalents anticipatory of the features disclosed in the patent in suit. Cf. Imhaeuser v. Buerk, 101 U.S. 647, 656, 25 L.Ed. 945 (1879). The operative elements of each claim must be considered as they relate to the over-all disclosure, not piece by piece apart from their intended and described function. Welsh Co. v. Chernivsky, 342 F.2d 586, 590 (7th Cir. 1965).

The structure and function of the device disclosed in the D'Azzo publication is substantially similar to that of the D'Azzo patent. Additionally, there is a tension spring which provides pull between the elements of the toggle and the lazy tong extension means. The spring is claimed to augment the force of gravity to achieve self-opening of the shield and to counteract the weight of the frame to facilitate the motion of the extension mechanism. It has not been shown that the spring alone would serve to extend the toggle mechanism and indirectly connected frame and cover from a fully retracted to a fully extended position. Having the function of augmenting as well as counteracting the force of the operative weight in the D'Azzo structure, the added spring does not serve to render the reference anticipatory of the over-all combination of elements of the claims in issue of the Frommelt patent. If, in fact, the device of the D'Azzo publication is self-opening, the operation is achieved by means and in a manner other than those disclosed in the patent in suit.

*Obviousness of the Subject Matter*

Defendant contends that the combined teachings of the D'Azzo references demonstrate the obviousness to a mechanic skilled in the art of using either a weight or a spring to spread a toggle joint. The Frommelt disclosure is not understood as presenting a novel means of extending such a joint. It directs itself to the provision of a toggle joint means in combination with a force acting thereon capable of extending the frame and enclosing cover of the loading dock shield. As noted above, the structure of the D'Azzo references does not function similarly to that of the Frommelt device. Gravity opening of frame and cover, even when augmented by spring action, does not suggest self-opening of the shield by exertion of a spreading force on the toggle joint means.

The Eshnauer patent is for an enclosing loading dock shelter or cover. It uses lazy tong extension means connected to a warehouse by a toggle linkage. Although substantially similar to the structure of the D'Azzo references, Eshnauer does not permit gravity opening of the

extension and support linkage and frame and cover. This shield must be extended and retracted manually. Defendant suggests the addition to Eshnauer of a spring shown in the Fogh awning patent where it is positioned at the pivotal connection of the arms and guide links and serves the functions of instantly starting the extension movement of the awning, of urging the awning to a fully extended position, and of avoiding a jar on retraction of the awning.

As defendant has observed repeatedly, the use of a spring or weight as a means of spreading a toggle joint is a well-known mechanical expedient. However, the testimony of its expert witness that the combination of the spring of Fogh and the toggle-lazy tong linkage of Eshnauer would have been obvious to those skilled in the loading shelter art at the time the subject matter of the Frommelt patent was developed is not convincing. The Fogh patent issued in 1936 on an application filed in 1932. Neither the Eshnauer nor the D'Azzo patents employed a combination of spring and toggle-lazy tong linkages to achieve self-opening of the shield notwithstanding the earlier disclosures of the related awning art. Further, it has not been shown that the combination of a spring and toggle-lazy tong linkage of Eshnauer would accomplish the objectives of the patent in suit. The self-opening feature of the similar D'Azzo publication shield is not accomplished merely by the force of the spring but depends on the operative weight of the structure.

Defendant's Giddings and Lewis installation, as shown in photographs and diagrammatic drawings, is a roll-type awning canopy with manually operated side curtains. It was installed within a building over a rail dock and track. The canopy was biased outwardly of the adjacent wall. Extension of the canopy was accomplished by unrolling of the awning, augmented by spring action on a toggle mechanism having a pivoted slide and connected arm, and also by the use of weights. Retraction of the canopy was by winding of the roller against the action of the spring and weights.

The Giddings and Lewis canopy is basically similar to the structure and operation of awnings shown in such patents as Fogh and Davenport, 1,742,437, issued in 1930. Combination of the Giddings and Lewis device with the D'Azzo references to supply the elements of the lower extension means and total enclosure does not suggest the structure of the combination of elements operating to achieve self-opening extension of an enclosing dock shield frame and cover.

The individual elements of the claims in issue are not new in the art of canvas type coverings such as awnings and loading dock shelters. In awning type structures, such as the Fogh patent or the Giddings and Lewis installations, toggle joint mechanisms acting under force of spreading means, such as a spring, were not addressed to the problem of providing an automatically opening, straight line extension enclosure in firm engagement with a vehicle to be loaded or unloaded. Cited examples of the loading dock shelter art, such as the Eshnauer patent or the D'Azzo devices showing some of the elements of the Frommelt claims in issue, do not accomplish the achievements of the patent in suit in a manner similar to that of the disclosure of the patent. The prior art neither shows nor suggests the combinative operation of the structure of the Frommelt shield.

*Presumption of Validity*

The references cited by defendant, that is, the D'Azzo patent and publication and the Giddings and Lewis paint spray booth installation, are no more pertinent than the art cited by the examiner. The toggle-lazy tong linkage extension features of the D'Azzo shields are substantially similar to those shown in the Eshnauer patent and those of the Pennington patent 1,076,310. The operative weight extending feature of D'Azzo is not deemed the equivalent of the spreading force element of the Frommelt claims acting on the toggle joint means, and it

has not been shown that the spring of the D'Azzo publication shield is capable of extending the structure, frame, and cover of the device. The D'Azzo references add nothing pertinent to Eshnauer patent which was cited by the examiner. The court will not speculate whether or not the examiner considered the import of this pertinent reference cited by him. The disclosure of the Giddings and Lewis installations is no more pertinent than the awning patents considered in the prosecution of the application of the Frommelt patent. Under the circumstances shown here, the presumption of validity attending the duly issued patent is not impaired.

■ Evidence offered on the questions of anticipation and lack of invention fails to establish that the prior art showed or suggested the combination of elements and their operation as disclosed in the Frommelt patent claims in issue. Plaintiff's loading dock shield constructed according to the teachings of the patent claims in issue has enjoyed commercial acceptance and success. Claims 2 and 5 of the Frommelt patent meet the statutory standards of patentability of Sections 101, 102, and 103 of Title 35 U.S. C.A.

Defendant's further claim of invalidity based on contentions of double inclusion of elements and of indefiniteness and vagueness of the claim language will be discussed below under the question of infringement.

*Infringement*

Defendant's accused device is a loading dock shelter for use with trucks or rail cars. It has an extensible frame, a cover mounted thereon, upper and lower extension means, and springs for maintaining a spreading force on the extension means. The frame and connected cover automatically extend from a fully retracted to a fully extended position. The accused shield is similar to the structure called for in Claims 2 and 5 of the Frommelt patent in all respects but one; it lacks the back pivot arm (18) of the upper extension means illustrated in Figure 2 and described in the specifications of the Frommelt patent. Lacking back pivot arm (18), the pivotal joint between member (18) and member (19) is absent. In the accused shield the upper and lower extension means are identical to each other. They are both identical to the lower extension means shown in the Frommelt patent structure.

In its advertising, defendant claims some advantages for the accused device similar to those shown as features of the Frommelt shield, including yieldability of any point of the frame to pressure "without pushing the rest of the shelter in or out."

Defendant concedes that its shield, manufactured and sold after issuance of the Frommelt patent and after defendant had knowledge of its disclosure, responds to elements (a) the frame, (b) the cover, and (e) the lower extension means of the claims in issue.

It is defendant's position that only the structure of joint (17), formed by the pivotal connection of arms (18) and (19), meets the language of the patent specifications setting forth the structure corresponding to the toggle joint means, element (c) of the claims of Frommelt, and falls within the mechanical engineering definition of such a linkage. An extension means consisting of sliding hinge (29), connected to arm (19), constitutes an indeterminate sliding hinge linkage, not a toggle joint extension means. A spring acting on this linkage does not exert a spreading force on a toggle joint means as called for in element (d) of the claims in issue.

Such a sliding hinge extension means acting under the spreading force supplied by a spring is found in the lower extension means of the patent in suit, element (e) of the claims in issue, and in both upper and lower extension means of the accused device. Defendant contends, therefore, that Claims 2 and 5 of the Frommelt patent, defining as part of the over-all combination a toggle joint mechanism not found in defendant's accused structure, do not read thereon directly

and are not applicable thereto under the doctrine of equivalents.

Plaintiff takes the position that the upper toggle joint extension means, element (c) of the Frommelt patent claims in issue, includes member (29) which is a slide hinge arm, not merely a hinge, and two arms, members (18) and (19). The member (29) is slidably mounted on a slide rod (30) for vertical movement therealong. One of the arms, member (19), has one end pivotally attached to the free end of member (29) and another end attached to the upper portion of the extensible frame. The other arm, member (18), has one end pivotally attached to the warehouse and another end pivotally connected to arm (19). Arm (18) is movable to various adjusted positions relative to arm (19) because of the longitudinally spaced holes (26) and (27) of arm (19).

Relying on the previously quoted dictionary definition of a toggle joint, plaintiff claims that such a joint is formed by the pivotal connection of member (29) and arm (19), and that a further toggle joint, joint (17), is found in the pivotal connection of arms (18) and (19), with arm (18) also serving as a guide link and as a means of providing the cover slope adjustability aspect of the invention, particularly claimed in Claims 1, 3, and 4 of the Frommelt patent not in issue in this suit. Under this view, the upper extension means, described as toggle joint means, includes two toggle joints—that formed by the connection between members (29) and (19) and joint (17) of the specifications, formed by the connection between members (18) and (19). Structure showing either of these joints is claimed to respond to the language of the claims in issue which call for toggle joint means.

Construction of the claim language in light of the specifications of the patent leads to the conclusion that joint (17), formed by the pivotal connection of pivotal back arm (18) and pivotal front arm (19), is an essential component of the invention claimed by plaintiff in using the term toggle joint means in the claims in issue in this suit.

A toggle joint means necessarily calls for a toggle joint as part of the structure corresponding to the means. The specifications, quoted previously, identify joint (17), shown in detail in Figure 2 of the patent, as a toggle joint having a knee (17a). "Each" toggle joint is defined as having a fixed, rear, or back pivot arm (18) and a vertically movable front pivot arm (19). The lower portion of arm (19) acts as means for transmitting force to the knee (17a) of the toggle joint. The pivot arms of the toggle joint means are defined as adjustably connected to permit adjustment of the slope of the cover.

In comparison, the specifications do not designate the connection between member (29) and front pivot arm (19) by number. The linkage of members (29) and (19) is not adjustably connected. Member (29) is described as a sliding pivot arm hinge, carried on vertical pivot arm slide rod (30) for vertical reciprocation of the hinge on the slide rod and thus vertical movement of the movable pivot arm (19).

It further appears from the specifications that the tension spring (32) exerts an upward vertical force on front arm (19) which causes said arm to move the front head bar (15) *upwardly*. The fixed back pivot arm (18) serves the function of causing the front pivot arm (19) to move *outwardly* under the influence of spring (32). The upward urge of front arm (19) *and* the outward urge of back arm (18) combine to project supporting bar (15) upwardly and forwardly until it reaches a position where the top section of the cover attached thereto is straight and taut. Thus it appears that back arm (18), which is not found in the accused device, serves a particular function in the extension operation of the upper extension means and, as it will be seen below, in the extension of the lower portion of the shield, in addition to providing the adjustability of the cover top feature disclosed in other claims not in issue in this suit.

■ Plaintiff's theory of claim differentiation is based on the assumption that back arm (18) only supplies this adjustability feature. Since the specifications reveal that this member, unlike the typewriter backspace key in relation to the basic typewriter disclosure in the example relied on by plaintiff, serves a specified function in the more broadly claimed invention disclosed in Claims 2 and 5 in issue, the theory has no application here.

Construction of the claims as requiring arm (18) and toggle joint (17) as essential components of the structure corresponding to the toggle joint means is further supported by the specification description of the lower extension means, element (e). This structure is defined as having extension arms which may be similar to "parts of the toggle joint means" and which are carried by the same or like slide rods as are the upper extension means. The linkage of sliding hinge (43) and extension arm (42), which is similar to the joint formed by sliding hinge (29) and pivotal extension arm (19) of the upper extension means, is not designated as a toggle joint. The outward extension of the lower portion of the shield which does not have a member corresponding to the back arm (18) or structure corresponding to toggle joint (17) of the upper extension means is, in part, dependent on the restrictive nature of the cover which directs the extension arms outwardly to straighten the bottom section. When the upper and lower supporting bars are connected to each other in the frame, the outward movement of the upper bar under urge of members (18) and (19) serves to move the lower bar outwardly at the same time.

The testimony is in sharp conflict on the question of whether or not the joint formed by sliding arm hinge (29) and pivotal arm (19) of the upper extension means meets the mechanical engineering definition of a toggle joint which is more limited than the dictionary definition in that it requires that such a linkage be determinate.

Toggle joint (17), described in the patent specifications, is a determinate linkage because back arm (18) serves to guide front arm (19) in a determinate path regardless of whether or not the mechanism is further guided and restrained by the presence of the frame or cover of the shield. On the other hand, the connection between slide hinge (29) and front arm (19), which lacks the guidance of arm (18) as well as the lower extension joint of the Frommelt shield and the upper and lower extension joints of the accused shield, would constitute indeterminate linkages wherein the path of extension would be free beyond the normal tolerances of the connection if the mechanism were outside the determining restraint of the frame or cover.

Differences in the function of these extension linkages considered outside the total environment of the disclosure of the claims, standing alone, would not necessarily be determinative in construction of the claim language. However, consideration of the technical definition of these linkages supports construction of the claim language as requiring toggle joint (17) which, in turn, requires the presence of member (18) as essential component structure of element (c), the toggle joint means for the upper extension of the shield. The patentees used the term "toggle joint" only in connection with structure meeting its technical definition.

Under plaintiff's construction of the claim language, element (c), the upper toggle joint means, and element (e), the lower extension means, would be met by the same structure notwithstanding the more particular requirement of a toggle joint means of the upper extension element and the differences in description of these elements in the specifications. Further, to meet the technical definition of a toggle joint, separately stated elements (a) or (b) would have to be inferentially incorporated into the structure corresponding to element (c), the upper extension toggle joint means. The construction contended for by plaintiff

would raise question as to the sufficiency of clarity and particularity of the claim language. See Simmons Company v. A. Brandwein & Co., 111 U.S.P.Q. 171, 176 (N.D.Ill.1956), aff'd 250 F.2d 440 (7th Cir. 1957).

In view of the court's construction of the claims in issue as requiring the presence of member (18) and of toggle joint (17), the teachings of Claims 2 and 5 of the Frommelt patent do not read on the accused device.

On the trial it was shown by testimony and demonstration that models of the accused shield and the patented structure accomplished similar extension of the shields and, further, that a model of the patented shield wherein back arm (18) was disconnected, thus eliminating its function and the structure of joint (17), extended similarly to the model with back arm (18) in position as shown in the specifications and drawings. The models were reduced scale reproductions and did not show the operation of these shields in full potential extension of up to eight feet or more as required, for example, in shelters intended for use with rail cars. A difference in the results achieved by the patented and accused structures was demonstrated on the models. In fully extended position, the top of the frame and cover of the accused shield, as well as that of the patented structure model with back arm (18) disconnected and, therefore, inoperative, yielded to hand pressure applied thereto. It may, therefore, be assumed to yield to outside pressure such as snow accumulations and the like. Where arm (18) was positioned as called for by the specifications of the Frommelt patent, no yielding or sag occurred in response to pressure, but the top remained straight and taut as called for in the patent in issue.

Consideration of the specifications and the evidence relating to the functions of toggle joints and nondeterminate sliding hinge mechanisms demonstrates that the apparently similar extension operations of the accused and patented structures in fact depend on the operation of differing physical principles. In the Frommelt shield, extension is accomplished by the spreading force applied to joint (17) with back arm (18) furnishing an outward, lateral urge and front arm (19) principally supplying an upward urge. Extension of the upper means and the restrictive nature of the enclosing cover aid the spreading force and downward urge of the lower extension arm to achieve lateral, outward extension of the lower portion of the shield. In the accused device which lacks the outward, lateral urge of back arm (18), the lateral extension of the upper portion and the lower portion of the shield is dependent on the force exerted by the restrictive enclosing cover of the device.

By way of comparison, it is to be noted that the cited prior art of the D'Azzo publication shield accomplishes a result similar to that of the Frommelt shield with means showing a combination of some of the elements disclosed in the claims in issue. It was distinguished as anticipatory art principally because its operation depended on physical principles other than those functioning in the patent in suit. Similarly, the accused device, although substantially similar in the result achieved and embodying some of the combinative elements of the claims in issue, does not infringe said claims. The patent office appears to grant the monopoly of a patent to narrow advances in improvements in this field. The court will not extend the monopoly beyond the clear requirements of the claim language as construed in light of the specifications. Arm (18) and toggle joint (17) are requirements of the structure corresponding to the upper extension means defined in Claims 2 and 5 of the Frommelt patent and essential to the self-extending operation called for in the patent. Omission of this structure avoids infringement. See Kennatrack Corporation v. Stanley Works, 314 F.2d 164, 167 (7th Cir. 1963).

Differences in structure, manner of operation, and result achieved prevent application of the doctrine of equivalents

on which to rest a finding of infringement of the claims in issue of the Frommelt patent by the accused shield. Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 194 F.2d 945, 947 (7th Cir. 1952); Simmons Company v. A. Brandwein & Co., 250 F.2d 440, 450 (7th Cir. 1957); Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The novel combination of old elements of the Frommelt patent constitutes a limited advance over the related, crowded awning art and such loading dock shelter patents as Eshnauer and D'Azzo. The claims in issue are to be accorded a narrow construction. Kennatrack Corporation v. Stanley Works, supra, 314 F.2d at 166; Beegle v. Thomson, 138 F.2d 875, 878 (7th Cir. 1943), cert. denied Beegle v. Thompson, 322 U. S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576. The range of equivalents is also of narrow scope. Flowers v. Austin-Western Co., 149 F.2d 955, 959 (7th Cir. 1945).

Plaintiff having failed to establish real identity of structure, function and result of the structure corresponding to Claims 2 and 5 of the Frommelt patent and that of the accused device, the court finds that said accused device does not infringe the claims in issue.

The foregoing opinion incorporates the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure. Briefly summarized, these findings and conclusions are as follows:

### FINDINGS OF FACT

1. The court has jurisdiction over the parties and the subject matter of this action for infringement of Claims 2 and 5 of United States Letters Patent 2,892,-463, owned by plaintiff.

2. Claims 2 and 5 of the patent in issue, which relate to a loading dock shield, teach the combination of a frame, cover, upper and lower extension means, and spreading means for extending and maintaining an extending force on said extension means and attached frame and cover. The upper extension means and related spreading force means are defined in these words:

"* * * toggle joint means connected to the upper portion of said frame and adapted to be connected to said warehouse for extending the upper portion of said frame; means for maintaining a spreading force on the toggle joint means sufficient to extend it and thereby the upper portion of said frame and the cover portion attached thereto from their fully retracted positions to their fully extended positions and then to continue to provide an extending force on them; * * *."

3. Back arm (18) and toggle joint (17), described in the patent specifications and illustrated in the patent drawings, are essential components of the structure corresponding to the toggle joint means upper extension mechanism defined in the claim language.

4. The patent in issue is an improvement patent.

5. Plaintiff's loading dock shelter embodying the principles of the invention disclosed in the patent in issue has enjoyed commercial acceptance and success.

6. The prior art references of the D'Azzo patent and the D'Azzo publication shield do not disclose the over-all functional combination of the elements disclosed by the patent claims in issue.

7. Combinations of the Giddings and Lewis installations together with the D'Azzo references or the Fogh patent; or of the Eshnauer patent considered with the Fogh patent, or with the Giddings and Lewis installations or with the D'Azzo references did not teach or suggest the combination of elements taught by the claims in issue to one skilled in the art at the time the invention of the patent in issue was developed.

8. The references cited in the patent office are as pertinent as the D'Azzo and

the Giddings and Lewis installation references relied on by defendant as prior art.

9. The accused device lacks structure corresponding to back arm (18) and toggle joint (17) formed by the pivotal connection of members (18) and (19).

10. Self-extension of the accused shield is achieved by the operation of physical principles different from those operative in the disclosure of the patent in issue.

11. Because of differences in structure and operation between the accused and the patented structures, the accused shield does not respond to the teaching of the patent claims and may not be deemed the equivalent thereof.

12. The accused shield does not infringe Claims 2 and 5 of the patent in issue.

CONCLUSIONS OF LAW

1. The court has jurisdiction of the action.

2. Defendant has failed to sustain its burden of proof of showing that the subject matter of Claims 2 and 5 of the patent in issue does not meet the statutory standards of invention.

3. The presumption of validity of the duly issued patent in issue prevails.

4. United States Letters Patent 2,-892,463 is valid.

5. The patent in issue being an improvement patent, its claims are construed narrowly, and the range of equivalents accorded thereto is not broad.

6. Claims 2 and 5 of United States Letters Patent 2,892,463 are not infringed by the accused shield.

In accordance with the foregoing findings of fact and conclusions of law,

It is ordered that the clerk enter judgment for the defendant and against the plaintiff dismissing the action and for defendant's costs herein.