**KENNATRACK CORPORATION,**
Plaintiff-Appellant,

v.

**The STANLEY WORKS, Defendant-**
Appellee.

**No. 13634.**

United States Court of Appeals
Seventh Circuit.

March 1, 1963.

Roy E. Petherbridge, Charles W. Bradley, Jr., Fidler, Beardsley & Bradley, Chicago, Ill., for appellant.

George N. Hibben, Chicago, Ill., T. Clay Lindsey, Peter L. Costas, Hartford, Conn., for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Kennatrack Corporation (sometimes herein called "Kennatrack"), brought this action to enjoin infringement of its United States Letters Patent No. 2,732,919, for a sliding door frame assembly, and to recover damages therefor. The Trial Court, sitting without a jury, granted judgment for defendant, and this appeal followed. Plaintiff contends that the Trial Court erred in concluding that the patent in suit was invalid and not infringed by defendant, The Stanley Works (sometimes herein called "Stanley"), in its manufacture and sale of a pocket-door frame designated Stanley frame model No. 2825.

From 1945 until early in 1952, Kennatrack manufactured and sold sliding door hardware (metal tracks, sliding door hangers and nylon rollers) for suspending sliding doors and enabling them to move across the tracks, and other accessory items. Early in 1951, Kennatrack began development of a complete pocket-door frame unit. A "pocket-door" opens by recessing into a pocket in the wall, as distinguished from a by-passing door, which opens by sliding one section of the door past the other.

In installing a pocket-door unit, the frame, on which the door will be slidably mounted, is first inserted into a rough opening of the wall, usually while the building is still under construction, and later covered completely by appropriate wall covering material.

Plaintiff's "Kennaframe" pocket-door frame unit was announced at the January 1952 National Home Builders Association Show in Chicago, where it received much favorable comment. The patent application was filed by Leonard E. Johnson, Jr.,

plaintiff's assignor, on June 24, 1952. The Kennaframe is not the first pocket-door frame conceived or marketed, but it has met with marked commercial success.

Three competitors charged with infringement of the patent in suit took licenses under it. A fourth competitor was defendant herein, which, on the basis of the developing market decided some time prior to January 1956, to produce its own pocket-door frame. The first sales were made in December 1956.

Kennatrack asserts that the District Court's finding of fact No. 27, as to non-infringement, and finding of fact No. 28, regarding file wrapper estoppel, are clearly erroneous. On the theory that no oral testimony was submitted on the issue of infringement, Kennatrack argues that the "documentary rule" applies to expand the scope of review so that these findings of fact may be set aside even if our own study of the documentary evidence indicates the findings to be not "clearly erroneous" but merely incorrect.

Kennatrack also characterizes as erroneous, conclusions of law Nos. 2 and 4, holding the patent in suit to be invalid.

In addition to the documentary evidence, there was oral testimony, and numerous demonstrations of physical models were made in the course of the trial. Where the findings are based on visual observation of physical demonstrations in Court, we must make allowances for the advantages enjoyed by the Trial Court "where the evidence is largely the testimony of experts as to which a trial court may be enlightened by scientific demonstrations." Graver Tank Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 274-275, 69 S.Ct. 535, 537-538, 93 L.Ed. 672, as quoted by Judge Major speaking for this Court in Hazeltine Research v. Admiral Corp., 1950, 183 F.2d 953, 954.

The Johnson patent in suit claims:

"1. A pocket door frame for insertion in a rough opening of a wall defined by a floor and two spaced vertical studs, comprising, a transverse header member comprising a

downwardly open channel member and a track member disposed within such channel member, said channel and track members being designed to support the weight of a door, said header member being of such length that when horizontally disposed its ends will engage the opposed faces of said studs, such ends having fastening means adapted to be shifted vertically to adjust the header member into said horizontal position, a split jamb member attached to the said header member at substantially the mid-point of the latter, said jamb member comprising two vertical outwardly facing channel members having a transverse tie between their lower ends provided with a foot plate for supporting the jamb member on the floor, the outwardly facing channel members having means for the attachment of wall covering materials thereto and having means pivotally connecting them to said header member at their upper ends, each of said channel members having a vertical slot at its pivotal connection to said header member such that the lower end of the split jamb member may be swung in the vertical plane of said header member to bring the same into vertical plumb position and thereafter fixed to the floor, whereby the essential requirements of leveling the header member and plumbing the split jamb member may be performed by a workman in installing the device.

"2. The combination of claim 1, in which a second split jamb member is provided for stiffening walls of a door pocket defined by the frame device and comprising a pair of channels back-to-back, each having a vertical slot at its upper end whereat such is pivoted on the header member at a position substantially midway of the length of the door pocket, the said channels having a transverse tie between their lower ends including a foot plate, said second jamb member being swingable also in the plane of the header member independently of the first said split jamb member, with the said foot plate at its lower end attachable to the floor whereby the second split jamb member may serve to reinforce and maintain the spacing of the walls of the door pocket."

Two embodiments are shown. In one the inverted U-shaped header element is formed of metal with a horizontally adjustable bracket at one end. The other embodiment has a wooden inverted U-shaped channel element with no adjustable bracket. It requires "shimming" at the ends of the header to fit it in the rough door opening. A "shim" is a thin wedge used for filling space, leveling, etc. In the wooden embodiment, tne depending walls of the header are grooved to accommodate the upper ends of the split jamb and split stud channel members.

In both embodiments a separate U-shaped track member is located inside and secured to the top wall of the U-shaped channel member.

The claims however are not limited to wood or metal headers and make no specific reference to either wood or metal.

The Trial Judge found as a matter of fact that plaintiff originally in 1952 marketed a pocket frame with a header channel entirely composed of wood. The all-metal header model followed shortly. In its advertising plaintiff referred to both as warp proof. In his testimony on cross-examination, Robert C. Fara, Kennatrack's plant manager, stated that the warp proof quality was attributable to the split jambs.

■ As the Trial Judge found, the patent in suit was not of pioneer quality but in a crowded art, and whatever advance made was of a very narrow character. If a valid patent had issued (contrary to the opinion expressed below) it must be limited to the precise structure disclosed and claimed. Simmons v. Brandwein, 7 Cir., 1957, 250 F.2d 440, 450.

■ One of the elements of the combination defined by the claims neither appears, nor is the subject of an equivalent substitution, in the accused Stanley device. As the Trial Judge stated in his finding of fact No. 27, infringement of the patent in suit was thereby avoided. Edwards v. Hychex Products, 7 Cir., 1948, 171 F.2d 259, 260.

Where claim 1 calls for:

" * * * a transverse header member comprising a downwardly open channel member and a track member disposed within such channel member, said channel *and* track members being designed to support the weight of a door, said header member being of such length that when horizontally disposed its ends will engage the opposed faces of said studs * * *."
[Emphasis added.]

Stanley omits the downwardly open channel member, using only the track member, which is in two telescoping sections to provide adjustability to different sizes of rough frame openings.

It is plaintiff's position that defendant has combined two elements into one, and that defendant's header comprises "a downwardly open channel and a V-shaped track integral therewith. That the downwardly open channel and track of the Johnson frame are not integral, but merely fastened with screws is of no consequence."

From our study of the record and exhibits, we cannot agree. Johnson claimed a channel-shaped member as a part of the header. He also claimed, as a separate element, a track member which was channel-shaped. Defendant's track is an independent single element supporting itself on brackets from the rough studs without the support of the separate channel-shaped member as required by the claims.

As originally filed none of the claims in the application defined the header member as having an inverted channel and a track within the channel as claims 1 and 2 in suit (as now so limited) do, and none called for the header member

to be of required length to suit the width of the rough door opening. The original four claims were all rejected by the Patent Examiner. New claims 5, 6, and 7, all of which also called for a single member header, were also rejected. All were cancelled. Claim 8 defined a two-piece header member. After an oral interview with the Examining Division, claim 8 was re-written as claim 13 which claimed a header of two members: a channel member and a track member, and also stated that the header member be of such length as to engage the opposed faces of the stud. In the "Remarks" accompanying the amendment, we find the statement:

"Claim 8 has been cancelled and rewritten as claim 13, to embody the features and limitations agreed upon in the aforementioned interview."

Claim 13 is the present claim 1 of the patent in suit.

■ It thus appears clear that the more limited claim 8, rewritten as claim 13 (and now claim 1), was submitted in response to rejection of the broader claims 5, 6 and 7. As stated in the District Court's finding of fact No. 28, file wrapper estoppel precludes reliance on the doctrine of equivalents to extend the claims of the patent in suit to cover matter expressly abandoned. Exhibit Supply Co. v. Ace Corp., 315 U.S. 126, 136–137, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

■ Plaintiff's invocation of the documentary rule is not supported by the record which shows examination and cross-examination of at least one witness, and physical demonstrations of the disassembled frames, on the issue of infringement. However, we hold the District Court's findings of fact Nos. 27 and 28 to be neither "clearly erroneous" nor incorrect.

■ With regard to the issue of validity, the District Court made detailed findings respecting the prior art, some of which had not been considered by the Patent Office, thus weakening the presumption of validity that would otherwise exist. Hobbs v. Wisconsin Power &

Light Co., 7 Cir., 1957, 250 F.2d 100, 105.

For example, the Pitcher commercial frame (which embodied many of the features of E. C. Pitcher's patents 1,831,-031 and 1,832,050, plus footplates at the bottom of the split jamb and split stud, in addition to means associated with the header for leveling the track and means for pivotally and vertically adjusting the split jamb and stud relative to the header) was not cited by the Patent Office. The evidence showed, and the Trial Judge so found, that the Pitcher commercial frame was also packaged and shipped in "knock-down" condition and assembled on the job.

Plaintiff contends that the installation procedure followed by defendant's expert in demonstrating the operation of the physical exhibit departed from the instructions provided by Pitcher. Defendant points out that plaintiff's own expert stated that frames could be installed in different ways depending on individual judgment. The physical exhibit and its demonstration were viewed by the Trial Judge. The anticipating effect of the structure is not dissipated by instructions which set out one of several feasible sequences of installation. Nor does it matter that mere finishing pieces forming the door jamb and opening were omitted as these do not alter the pertinent elements of the structure in which we are interested with reference to the patent in suit.

The Forgette patent, No. 2,564,968 (with floor plates substantially the same in structure, mode of operation, and result as the floor plate of the patent in suit) was not cited by the Patent Office; nor was the Goldsmith patent, No. 1,654,-970 (with a slot and bolt connection which permits the door frame members to be adjusted vertically, and also laterally, by a pivotal action in substantially the same manner and with substantially the same result as the bolt and slot connection between the split jambs and header of the patent in suit).

■ Our study of the record leads us to full agreement with the District Court

that the elements of the structure defined in claims 1 and 2 of the patent in suit were old in the art and performed their old functions without modification, achieving no unusual consequence from their aggregation. We must conclude, as did the District Court, that the subject matter as a whole would have been obvious, at the time of the alleged invention, to one of ordinary skill in the art.

■ Plaintiff stresses the marked commercial success of its device. The position of this Court on the element of commercial success is clearly set out by Judge Duffy speaking for the Court in H. W. Gossard Co. v. J. C. Penney Co., 7 Cir., 1962, 304 F.2d 515, 517–518:

"This Court stated in Hueter v. Compco Corp., 7 Cir., 179 F.2d 416, at p. 418: 'In a close case evidence of the commercial success may tip the scales in determining whether an improvement amounts to an invention.'

"However, it is just as well established that commercial success without invention will not make patentability. [citing cases.] 'Although commercial success may be relevant in a doubtful case of patentability, it may not be used to create a doubt on the question where none would otherwise exist.' Application of Jones, Cust. & Pat.App., 298 F.2d 944, 946. Commercial success will not sustain a patent in view of clear proof of invalidity. Jungersen v. Ostby & Barton Co., et al., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235."

The District Court found that plaintiff's success was due to the existing demand for sliding pocket-door frames of any and all kinds, because of the huge post-war upsurge in building construction, to plaintiff's own nationally established position in the field, to plaintiff's established sales force and national contacts, to its intensive current national advertising and to its past advertising which emphasized the warp proof character of its split jambs with wood inserts, which were old in the art, having been disclosed in the 1941 Pitcher patent No. 1,831,031,

and incorporated in pocket-door frames sold commercially by the Pitcher Company in the 1930's and 1940's.

Besides, the wooden slot frames which the patent in suit allegedly improved continued to increase in volume of sales despite availability of the patented frame. The sales by manufacturers of wooden pocket frames and hardware were found to be little affected by sales of the patented frames. The wooden frames far outsell the metal frames.

The District Court found that the sales of metal frames by plaintiff's licensees (who were relatively small concerns with low production, and who accepted plaintiff's licenses on favorable terms after being notified of charges of infringement) were small compared to the sales of individual wood pocket frame manufacturers.

We have carefully examined all other contentions urged on us in behalf of plaintiff, but none of them disturbs our conclusion that the judgment of the District Court must be affirmed.

Affirmed.