**WEN PRODUCTS INC., an Illinois corporation, Plaintiff-Appellant and Appellee,**

v.

**PORTABLE ELECTRIC TOOLS, INC., an Illinois corporation, Defendant-Appellee and Appellant.**

**Nos. 15082, 15083.**

United States Court of Appeals
Seventh Circuit.

Oct. 21, 1966.

---

Charles B. Cannon, Edward A. Haight, Robert E. Burke, Haight, Simmons & Hofeldt, Chicago, Ill., for plaintiff-appellant and appellee.

John Rex Allen, Ernest A. Wegner, Charles L. Rowe, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., for defendant-appellee and appellant.

Before DUFFY, Senior Circuit Judge, KNOCH and CASTLE, Circuit Judges.

DUFFY, Senior Circuit Judge.

The appeal by the plaintiff is from that part of the amended final judgment dated January 15, 1965, which adjudged Claims 4, 5, 6 and 7 of United States Patent No. 2,866,485 not infringed by either of defendant's alleged infringing jig saw tools, Models 2100 and 2100B.

The appeal of the defendant is from that part of the amended final judgment which held Claims 4, 5, 6 and 7 of the patent in suit to be valid, and dismissing the counterclaim which sought a judgment that the patent in suit be declared invalid.

There are seven claims in the patent in suit. However, plaintiff relies only upon Claims 4, 5, 6 and 7. These claims relate primarily to the counter balancing mechanism used in small jig saw tools. As to defendant's jig saw tool, Model 2100, plaintiff relies upon Claims 4, 6 and 7.

As to defendant's Model 2100B jig saw tool, plaintiff relies upon Claims 4, 5 and 7.

Patent No. 2,866,485 in suit was granted on December 30, 1958, to Nicholas Anton, the president of plaintiff corporation, on an application filed March 19, 1958, on "Power Tools," as a continuation in part of a co-pending and earlier-filed application of the same inventor which had been filed November 30, 1955, and later abandoned. All of the rights to and under the patent in suit were vested in plaintiff at all times material hereto.

Plaintiff's patented device is an electrically-operated hand jig saw tool. It is particularly adapted for use by so-called "Do-it-yourself" workers and others, for sawing light lumber, boards or plywood. The tool is commonly referred to as a reciprocating jig or saber saw.

The patent in suit calls for a combination of elements including a driving spur gear and reciprocating parts driven thereby, the spur gear having a counterweight which has a weight of pre-determined relationship with the weight of the reciprocating parts.

A number of problems had been encountered in the manufacture and use of small, light-weight, electrically-operated, single-drive gear hand jig saws. It was necessary that they be sold at a relatively low price for workshop use as distinguished from industrial use, but the major problem was to prevent excessive vibration which was common in small electrically-operated jig saw tools then in use. Many attempts had been made to solve this problem including a complicated and expensive driving mechanism employing counter-rotating gears and planetary gear systems.

Plaintiff claims that in 1955, the patentee developed an improved electrically-operated hand jig saw having a minimum of objectionable vibration, and that from November 1955 through August 1964 more than 300,000 of these saws were sold. Plaintiff also claims that in 1956, defendant began purchasing plaintiff's saws for resale and that in the fall of

1957, defendant brought out the first of the jig saws here accused—Model 2100.

Plaintiff claims the problem of excessive vibration was solved by the patentee by the discovery and utilization of a previously unknown and significant relationship between the weight of the counterweight means on a single main track gear, and the total weight of the tool-holder slide, the cross head and pin means, hereinafter referred to as the reciprocating parts. Thus, an important and novel feature of the device of the patent in suit is the relationship of the counterweight in the single main drive gear to the combined weight of the reciprocating parts of the tool.

The patent specification provides one example only of the related weights of the reciprocating parts and the counterweight. The weight of the counterweight is not stated in the specification but can be computed from the dimensions given in the specification. These weights as found by the District Court are 0.42 oz. for the counterweight and 0.98 oz. for the reciprocating parts.

We consider first the appeal by the plaintiff. The basis for the conclusion of the District Court of non-infringement was that the counterweights in the accused saw were not "substantially smaller" than the weight of the reciprocating parts as required by the claim of the patent. The plaintiff points out that in the accused Model 2100 jig saw, the counterweight was 70.5% of the weight of the reciprocating parts, and that in Model 2100B, the counterweight was 81.1% of the weight of the reciprocating parts.

The District Court held that the patent claims should be construed as being limited by the specific example given in the specification, and construed the words "substantially smaller" as requiring that the weight of the counterweight be approximately 50% less than the weight of the reciprocating parts. In the only example given in the patent specification, this relationship existed.

The file wrapper of the patent in suit shows that when the second application was filed (as a continuation in part of a previous application which was later abandoned), there was no mention in the specification or claims of any relationship between the weight of the counterweight and the weight of the reciprocating parts. The claims filed with the application were cancelled after rejection by the Examiner. The applicant attempted to amend the application by inserting into the specification the weight of the counterweight as 0.56 oz. and by adding two claims in one of which the weight of the counterweight was said to be approximately half of the weight of the reciprocating parts, and in the other claim (later cancelled), the counterweight was stated to weigh 0.56 oz. and the reciprocating parts 0.98 oz.

Before any action was taken by the Patent Office, but after an interview with the Examiner, another amendment was filed on September 29, 1958 in which all reference to the counterweight weighing 0.56 oz. was cancelled, and was replaced by language to the effect that the weight of the counterweight can be obtained from its dimensions.

Thus, the applicant cancelled from Claim 9 the limitation "said counterweight having a weight of approximately half the total weight" of the reciprocating parts, and substituted therefor the limitation "said counterweight having a weight bearing a predetermined relationship to and being substantially smaller than the total weight" of the reciprocating parts, i. e., 42%.

We think that the District Court's holding of noninfringement of Claims 4, 5, 6 and 7 should be sustained. The District Court carefully considered the file wrapper, the prior art and the specifications of the patent in suit. Because of the crowded state of the art, the Court was correct in restricting the claims of the patent to a narrow range of equivalents. In Fife Manufacturing Co. v. Stanford Engineering Co., 7 Cir., 299 F. 2d 223, 226, we said—"Where the patent

is found in a crowded art, the doctrine of equivalents is given a narrow range."

Claims 4 and 7 are the broader claims. They specifically require that the counterweight be substantially smaller than the total weight of the reciprocating parts. The weight relationships of the accused devices were quite often different from the critical relationships described in the patent.

Claims 5 and 6 are narrower claims, but we hold that they also were not infringed. Claim 5 is dependent on Claim 4 and is not infringed by Model 2100B for the same reason that Claim 4 does not infringe in that it does not have the weight relationship between counterweight and reciprocating parts required by the claim. Also, Claim 5 is further limited to include other structure not present in Model 2100B. Claim 6 is also dependent on Claim 4 and does not infringe for similar reasons.

■ Thus, we agree with the District Court and affirm its judgment that Claims 4, 6 and 7 of Patent No. 2,866,-485 have not been infringed by defendant's Model 2100 jig saw tool, and that Claims 4, 5 and 7 of Patent No. 2,866,485 have not been infringed by defendant's Model 2100B jig saw tool.

Considering next the defendant's appeal on the question of validity of the patent, we again keep in mind that the patentee was working in a crowded art. Pertinent is the rule we stated in Kennatrack Corporation v. Stanley Works, 7 Cir., 314 F.2d 164, 166—"As the Trial Judge found, the patent in suit was not of pioneer quality but in a crowded art, and whatever advance was made was of a very narrow character. If a valid patent had issued * * * it must be limited to the precise structure disclosed and claimed. Simmons Co. v. A. Brandwein & Co., 7 Cir., 1957, 250 F.2d 440, 450."

Defendant argues the patent in suit is invalid because it was anticipated by and was obvious over a prior art saw (Duwel) which the patentee admittedly had before him when he designed the saw of the patent in suit. Defendant argues al-

so that no presumption of validity exists with respect to prior art that was not before the Patent Office. Defendant points out that the Duwel saw was not before the Patent Office while the patent in suit was pending. In fact, defendant argues that the patentee Anton withheld his knowledge of the Duwel saw from the Patent Office, and that his failure to advise the Patent Office of Duwel amounted to "unclean hands" which invalidates the patent.

The District Court found "that the Duwel jig saw was without weight specifications which anticipated the measurements of counterbalance employed by Anton in Wen Model 505." We think the District Court was correct in finding that the Duwel saw did not embody the significant weight relationship (of counterweight means to total weight of reciprocating parts) of the claims in suit.

Witness Dodegge who designed the Duwel saw testified he did not weigh any of the reciprocating parts of the tool and demonstrated that he had no understanding as to the significant weight relationship called for in the claims in suit. He further testified he designed the Duwel saw "by hit and miss." Also important is the evidence, including a demonstration in court, that the Duwel saw vibrated excessively.

■ We hold there was no "unclean hands" on the part of the applicant-patentee in the Patent Office in not disclosing the Duwel jig saw tool, because that tool did not embody the inventions of the claims in suit. As was said in United States v. Standard Electric Time Co., 155 F.Supp. 949, 952 (D.Mass.1957), appeal dismissed 254 F.2d 598, 1 Cir., 1958: "There has been no showing that under any statute, or rule of the Patent Office, or professional custom, or canon of ethics there is any explicit or implicit obligation resting upon an applicant for a patent or his solicitor to disclose to the Patent Office all the material which he has used in evolving the invention he claims."

Defendant also argues the claims of the patent in suit are invalid for "late

claiming" or "public use." However, the invention of the claims was disclosed in applicant's earlier application and was carried forward into the second application.

Limiting Claims 4, 5, 6 and 7 of the patent in suit to the precise structure disclosed and claimed, we hold the District Court was correct in holding such claims to be valid.

The judgment of the District Court on Appeal No. 15082 is affirmed.

The judgment of the District Court on Appeal No. 15083 is affirmed.

Each of the parties shall pay his own attorney fees. Any other taxable costs shall be equally divided.