## GREAT LAKES STAMP & MFG. CO., Inc., Plaintiff-Appellant and Appellee,

### v.

## REESE FINER FOODS, INC., Chicago Paper Company and Weldotron Corporation, Defendants-Appellees and Appellants.

### Nos. 16441, 16442.

United States Court of Appeals Seventh Circuit.

Sept. 19, 1968.

Rehearing Denied Oct. 17, 1968.

---

C. Frederick Leydig, J. Robert Cassidy, Chicago, Ill., for Great Lakes Stamp & Mfg. Co.; Wolfe, Hubbard, Voit & Osann, Chicago, Ill., of counsel.

Charles W. Bradley, Jr., Chicago, Ill., Harry Cohen, New York City, Fidler, Bradley & Patnaude, Chicago, Ill., for defendants-appellees.

Before MAJOR, Senior Circuit Judge, and SWYGERT and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Action for infringement of a patent entitled Method of Heat Shrinking Wrappers on Food.[1] Plaintiff is Great Lakes Stamp & Mfg. Co., Inc., employer of the patentees and assignee of the patent. Defendant Weldotron Corporation manufactured and sold equipment which is alleged to be specially adapted for carrying out the patented process. Defendant Chicago Paper Company resold the equipment, and defendant Reese Finer Foods, Inc. has used some of it to carry out the patented process.

The district court made findings of fact and concluded that the patent was invalid under 35 U.S.C. sec. 103 (obviousness) and under 35 U.S.C. sec. 102 (known or used by others before the invention by applicant, and in public use more than one year prior to the date of the application). Plaintiff has appealed. The district court also concluded that if

1. No. 2,906,627, issued September 29, 1959, to John H. Payton and Hilmar Schuetze, assignors:

the patent claim were valid, it had been infringed. Defendants Reese and Weldotron appealed from the failure to declare there had been no infringement.

### Motion to dismiss.

■ The district court entered judgment June 30, 1967 declaring the patent invalid and awarding defendants their costs. On motion of defendants, without objection by plaintiff, the court entered an "amended judgment" July 12, 1967. It was identical except for the addition of an express dismissal of the complaint and amended complaints. Plaintiff's notice of appeal, filed July 27, referred to the findings, conclusions, and judgment entered June 30, but failed to mention the amended judgment. Defendants moved to dismiss, contending we have no jurisdiction. They say the June 30 judgment, mentioned in the July 27 notice of appeal, was no longer the final judgment, and the notice failed to bring before us the amended judgment, which was not mentioned.

Under the circumstances, the intention to appeal from the final judgment was clear, and no one could be misled by the failure to make a specific and accurate reference to the amended judgment. We deem the amended judgment is here for review just as if the notice had made such reference.[2]

### The patent in suit.

The only claim is a method claim and reads as follows:

"We claim:

"The method of packaging food comprising encasing a food product in a heat shrinkable wrapper, progressively conveying said food package through a limited heating zone in an enclosure, forcibly directing a stream of hot air at all exposed sides of said food package to shrink the wrapper thereon at all exposed sides, and salvaging relatively hot air outside the opposite ends of said heating zone but still in said enclosure to maintain a substantially constant temperature in said heating zone and recirculating the salvaged air to said heating zone for subsequent impingement on subsequently conveyed food packages."

The application, filed August 3, 1956, contained four claims, each of an apparatus for treating packaged foods traveling on a horizontal conveyor through a chamber within a housing, with means for feeding warm air into the chamber and means for returning cooled air to be warmed and refed into the chamber. All claims were rejected.

The applicants amended by adding two apparatus claims, 5 and 6, and two method claims, 7 and 8. The patent office required the applicants to elect either the apparatus or the method claims. They elected the latter.

Claim 7 read:

"7. The method of packaging foods compactly comprising encasing the same in a heat-shrinkable wrapper, conveying the wrapped food through an enclosure, subjecting the sides and top of the wrapped food to warm air current directed into a portion of the enclosure from the walls thereof and drawing off the cooler air currents from beyond said portion."

Claim 8 was similar.

Claims 7 and 8 were rejected, one reason being stated as follows:

"Claims 7 and 8 are rejected as unpatentable over each of the patents to Weikert, of record, and Cavallito and De Poix, both cited above, in view of either one of the patents to Werner and Lydon, both of record. It is pointed out that each of the Weikert, Cavallito and De Poix references shows it to be old to package foods compactly in a heat-shrinkable wrapper by wrapping the food in the heat-shrinkable wrapper and then exposing the wrapped food to heated air to shrink the wrapper onto the food. It is appreciated that none of the Weikert, Cavallito, and De Poix references discloses the air circulation step as set forth in the

2. Cf. Foman v. Davis (1962), 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222.

claims. However, this feature of re-circulating air is of course conventional practice as seen for example in each of the Werner and Lydon references. Accordingly, no patentable significance can be attached to this feature of the claims since it would appear to be a matter of choice, economics and expedient and well within the purview of the skilled individual to provide the heated air enclosures referred to in each of the Weikert, Cavallito and De Poix references with an air recirculation system, if such be desired, and particularly so in view of the teachings disclosed in each of the Lydon and Werner references. It appears that at best applicant has selected certain features of the prior art deemed by him desirable in the production of this product."

Applicants then substituted claim 9, the one ultimately allowed. The amendment was accompanied by remarks asserting that there had been an interview in the patent office and a demonstration of the applicants' commercial machine. It had been demonstrated that while packages were satisfactorily heat shrunk with the blowers in operation, packages put through at the same temperature but in the absence of forced air were of inferior quality.

Applicants stated "The novel function afforded by the applicants' method lies in the forcible impingement of an air stream or jet at the exposed surfaces of a shrinkable wrapper on a package in conjunction with the particular salvaging which causes a turbulent hot air in conjunction with the salvaging." They further alleged distinctions between their claim and the patents previously cited.

The patent was then issued, containing the single method claim previously quoted.

*Scope and content of the prior art.*

The patent office cited ten patents, and defendants produced others, as well as several publications, considered by the district court.

The district court found: Conveyorized ovens or tunnels with recirculation from outside the opposite ends of an internal heating chamber or zone are not new. Such ovens of appropriate heating capacity and readily adaptable to carry out plaintiff's process have been available commercially for many years. Patents which disclose the use of dry heat for film shrinking do not show the details of the heating source, but simply suggest that articles may be packaged by encasing them loosely in a shrinkable film, then sealing the film, and either blowing with heated air or passing the same through an oven, without specifying the construction of the oven.

Plaintiff concedes that there were prior patents "in which a heat-shrinkable film was said to be shrunk either by passing a package through an 'oven' or 'heated compartment' or by 'blowing with heated air.' " It also concedes "that the world has long been full of furnaces and ovens having recirculating air systems." It points out, however, that although there were patents for recirculating air furnaces and ovens for paint drying, baking, and the like, neither these patents nor the publications cited by defendants described or suggested the use of these devices to shrink heat-shrinkable film when used as packaging.

The court also found:

"Cloud patent 2,490,781, Osterhof patent 2,549,122 and Berst patent 2,829,791, all suggest packaging food articles by running the articles, loosely wrapped in shrinkable film, through a conveyorized oven. Grabenstein patent 2,784,456 states that hot air is the most convenient way to shrink package, and the particular air temperature required depends upon the mass and velocity of the air.

"Shoemaker patent 2,029,131 discloses heat shrinking by evaporating moisture from a cellulosic film to cause the film to contract or shrink, and suggests using heat and air circulation, explaining that a marked reduction in shrink time is achieved by directing a current of warm air against the wrapper—and specifically mentions the use of a suit-

able drier. Also, an article in the January 1949 issue of 'Food Industries' discloses the use of a heated wind tunnel to shrink bands about the tops of wine bottles at an Italian Swiss Colony Winery, and mentions that other wineries use counterflow hot air tunnels.

" * * * the Ruff article of record on 'Recirculation as Applied to Heating and Cooling on Industrial Ovens,' and the Paschkis text entitled 'Industrial Electric Furnaces and Appliances,' show * * * quite clearly that in conveyorized ovens, as well as in ovens of other types, moving air results in more rapid heating. Indeed the advantages of using high velocity recirculation for rapid heating are described in such detail in the Ruff article that one would have to ignore this article completely, not to at least try recirculating air rather than still air if rapid heating is desired."

An important segment of the prior art relates to certain activity of William S. Cloud, an inventor and developer of packaging machinery. It is undisputed that Cloud and several associates operated a machine for wrapping oranges in pliofilm in Florida in three seasons, 1945 to 1948. The machine never became commercially successful, but was the subject of a patent applied for in 1946 and issued in 1949.[3]

The Cloud machine encapsulated oranges between strips of pliofilm. The pliofilm had not previously been rendered heat shrinkable, but was heated and stretched in the process of forming the capsules around the oranges. It tended to shrink around the orange. The capsules were too large for the smaller oranges, and as the oranges left the machine, on a conveyor, they passed through what the patent referred to as an oven. It was also referred to at trial as a tunnel.

The district court made findings with respect to the Cloud oven or tunnel. Plaintiff challenges them, but where they do resolve issues of fact, there is ample supporting evidence, and they are not clearly erroneous.

The court found:

"The tunnel was installed in the spring of 1946 and used for shrinking the wrappers on the oranges during the remainder of that season and the two following seasons. It had a lower compartment through which the wrapped oranges passed on a conveyor and an upper compartment to recirculate the air. There was a heater and fan above the tunnel near the infeed end. The hot air entered through the roof of the tunnel near one end to strike the wrapped oranges, passed along the lower compartment of the opposite end of the tunnel, and then returned to the fan by way of the upper compartment. Recirculation was used to get the tunnel temperature up to 160 to 180 degrees Fahrenheit using a fan having a heating capacity of only 60 degrees.

"The operation of the tunnel was not experimental. After it was installed, the only change required was the addition of a screen across the opening into the return duct to keep empty Pliofilm bubbles from being drawn into the fan and clogging it. Some other changes were made after the end of the first season, to accommodate the tunnel to a changed location, but these did not constitute experimentation.

"Well over a million oranges shrunk were wrapped by the Cloud tunnel and sold on the East Coast market throughout more than two orange seasons. The tunnel was not concealed, but was seen by all those working on the project and was open to people who visited the orange wrapping operation. This included a number of people from the immediate area, some people from the Florida Citrus Exchange, the Florida Citrus Commission, a delegation from Kraft Foods, one from Goodyear, and the chief engineer from Stokes &

3. Method and Apparatus for Preparing and Utilizing Sheet Material for Packaging Purposes, No. 2,490,781.

Smith. Also, the movie of the opera-- tion was shown to many people during the 1940's."

The court also found that the Cloud shrink tunnel was known and used before the invention described in the claim and was in public use more than one year before the date of the application. He referred to the testimony of three witnesses who had participated in operating the tunnel, and listed documentary and other corroborating evidence. He deemed the facts established beyond a reasonable doubt.

### Differences between the prior art and the claim.

The patents and publications which were before the court disclosed, separately, (1) the process of blowing hot air on a package wrapped in heat shrinkable material in order to shrink the wrapping around its contents, (2) the process of subjecting such package to heat for the same purpose, within an enclosure, by conducting the package through an oven on a conveyor, but without suggesting forced circulation of hot air, (3) the process of subjecting articles to forced air heat for various purposes other than shrinking a heat shrinkable wrapper by placing the article within or conducting it through an oven in which hot air is circulated or recirculated after reheating.

The patents and publications considered do not expressly counsel combining these concepts, and using (3) for the purpose of shrinking a wrapping. The claim, in substance, does so.

With respect to the Cloud activity, the pliofilm fed into Cloud's orange wrapping machine had not been previously processed so as to be heat shrinkable. After being heated and stretched to form the capsule around the orange, it tended to shrink even without heat, but if the oven was not used, the film would usually "set" and stop shrinking before it fit snugly around a smaller orange. By pricking the film, in order to permit air to escape, and by using the oven or tunnel, a more satisfactory shrink was achieved.

The principal difference between the process in the Cloud tunnel and the claim, other than the difference in the film, already referred to, is that Cloud salvaged the "relatively hot air" near one end of the tunnel only, while the claim calls for salvaging such air in two places outside the heating zone. The district court said, "The Cloud tunnel was essentially a complete anticipation, since it used recirculation from one end. However, at the very least, a tunnel having recirculation from the opposite ends would be obvious in view of this tunnel."

### The level of ordinary skill in the pertinent art.

There was no finding which identified the pertinent art nor determined the type or extent of the education, experience, specialization, or skill of those who practiced it in 1956. The parties touched only briefly on the subject at trial.

Plaintiff suggests that packaging is the pertinent art. Accepting that, we think it fair to infer from the record that a substantial number of people devote all or a substantial portion of their efforts to packaging problems, and that they have the intelligence and ability associated with responsible positions and the knowledge and skill ordinarily acquired from substantial experience in a somewhat specialized field. The district court must have had some such appraisal of the level of ordinary skill in mind when he found "that it would have been obvious in 1956, to one having ordinary skill in the art, to build or order a conveyorized oven having recirculation generally, or even recirculation from outside the opposite ends of a heating zone, in response to the directions in the various patents to pass a loosely wrapped article through an oven on a conveyor, or through a drier or counterflow wind tunnel."

### Obviousness.

The district court considered the Cloud tunnel an anticipation and found the claimed invention known and used by others before invention by the applicants as well as in public use more than one

year prior to the application. Either of these propositions would render the patent invalid under 35 U.S.C. sec. 102(a) or (b).

Assuming, however, that the Cloud tunnel was not quite an identical disclosure, the district court concluded that the claim is invalid because the differences between the subject matter patented and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention to one having ordinary skill in the art.

■■ Plaintiff relies upon the statutory presumption of validity.[4] It is true that the issuance of the patent embodies the conclusion by the examiner that the use of the claimed process for the purpose of shrinking heat-shrinkable wrappers was a new (and not obvious) use of a known process. But the examiner does not appear to have considered several patents and publications produced before the court nor the operation of the Cloud tunnel described at the trial. The statutory presumption has little, if any, force as against relevant prior art not shown to have been considered by the patent office.[5]

■ Plaintiff correctly asserts that its shrink tunnel was the first commercially available device which employed the process of shrinking a plastic film wrapper by blowing the wrapped package with hot air, and that since the advent of its tunnel the use of shrinkable films in dry shrinking and the sale of equipment adapted for dry, hot air shrinking has grown to a very large volume. This fact is advanced to refute the contention that the use of its process for the purpose was obvious in 1956 to persons having ordinary skill in the packaging field.

This type of fact is relevant, but secondary.[6]

The district court made findings to the effect that there has been widespread disregard of plaintiff's patent by the trade; that the need for a shrink tunnel first arose in 1955 or 1956 when for the first time heat shrinkable film having good sealing properties became commercially available at a reasonable price, not long before the first sale of a shrink tunnel by the patentees; that there had been no meaningful failures by others; and that the record fails to show that the large increase in sales of shrink film since 1956 can be attributed to the claimed invention. Plaintiff challenges these findings. Some of their details may indeed be debatable, but they have enough substance to debilitate the inference that persons having ordinary skill in the art had made a sufficient effort to solve the problem so that any obvious solution would have been achieved before the development of plaintiff's tunnel.

■ We conclude, as did the district court, that the use of the claimed process for the purpose described in the claim would have been obvious in 1956 to a person having ordinary skill in the packaging art. In our view the presumption of validity has been overcome.

We do not reach the question of infringement, raised protectively by defendants' appeal. That question involves the interpretation of the terms in the claim "salvaging relatively hot air outside the opposite ends of said heating zone but still in said enclosure."

The judgment is affirmed.

4. 35 U.S.C. sec. 282.

5. Skirow v. Roberts Colonial House, Inc. (7th Cir. 1966), 361 F.2d 388, 390; Novo Industrial Corporation v. Standard Screw Company (7th Cir. 1967), 374 F.2d 824, 877, Cf. Hunt v. Armour & Co. (7th Cir. 1950), 185 F.2d 722, 726; Kennatrack Corporation v. Stanley Works (7th Cir. 1963), 314 F.2d 164; Milton Manufacturing Co. v. Potter-Weil Corporation (7th Cir. 1964), 327 F.2d 437.

6. Graham v. John Deere Co. (1966), 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.