The **DOLE VALVE COMPANY**, Plaintiff,

v.

**PERFECTION BAR EQUIPMENT, INC.,**
**Defendant.**

**No. 67 C 1126.**

United States District Court
N. D. Illinois, E. D.

Dec. 17, 1968.

---

8. Frank v. Mangum, 237 U.S. 309, 325, 35 S.Ct. 582, 586, 59 L.Ed. 969 (1915).

John D. Simpson and Donald J. Simpson, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for plaintiff.

Wm. Marshall Lee, Richard G. Lione, Jerry D. Hosier, and Hume, Clement, Hume & Lee, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

The Dole Valve Company is attempting to enforce patent 3,162,323, alleging that beverage dispensing systems assembled by Perfection Bar Equipment, Inc. infringe its provisions. In response, Perfection claims the patent is invalid and maintains that its devices do not infringe. Both companies are Illinois corporations. Jurisdiction is founded upon 28 U.S.C. § 1338.

Issued in 1964 to Mr. Kromer, the contested patent covers a "method of and apparatus for carbonating, cooling, storing, distributing and dispensing beverages." The field of fluid flow, however, is an old one in which the art is sophisticated and well known. Plaintiff concedes that the patent builds upon two earlier Kromer patents [1] which disclosed many particulars of the instant system.

After a detailed trial, I conclude that the patent is invalid, both because obvious and because anticipated by the prior art. Only two of the three accused devices infringe its claims. The first section of this opinion will analyze the contribution disclosed by the patent. Then the issue of validity will be discussed, followed by an application of the patent's claims to the accused devices.

### I. The Invention

Initially, one should understand precisely what aspects of the patent are old. The parties agree that the earlier Kromer patents, among others,[2] disclosed fluid systems which carbonate fresh water, store and refrigerate it in a tank, circulate the water to dispensing faucets, and automatically add additional fresh water to the system when needed. Specifically, in these systems water is circulated in a closed circuit, including a storage tank, by a constantly operating suction pump. When the level of fluid in the tank reaches a predetermined lower level, sensing electrodes actuate a second pump which then draws additional fresh water into the system. See diagram 1, appendix A. As water enters the system, the level in the tank rises; when it reaches a predetermined upper level, a second sensing electrode stops the intake pump. An ordinary check valve closes the fresh water line when it is not in use.[3]

---

1. Kromer 3,011,681 and Kromer 3,058,620.

2. See note 13 infra; see generally "II. A. Obviousness" infra.

3. The above described two-pump system was publicly sold by plaintiff's predecessor as the "Atlas" system more than one year prior to Kromer's application for the instant patent. See 35 U.S.C. § 102; see also Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L. Ed.2d 304 (1965).

The contested Kromer patent, also referred to as the "Tuckaway" system, altered prior art in only one significant respect: the circulation pump and the intake pump were replaced by a single pump and a control valve. To accomplish this, the fresh water is no longer drawn into the tank by a separate pipe; rather, the Tuckaway system connects the fresh water inlet directly with the circulating system, joining that system between the control valve and the single pump. This juncture and the control valve are both upstream from the pump, so that when the control valve is closed the pump's suction pulls fresh water into the system. See diagram 2, appendix A. On the other hand, when the control valve is open, the check valve prevents fresh water from entering; the pump then circulates carbonated water throughout the dispensing unit. Thus, this constantly operating pump performs both the intake and circulation functions. The control valve is actuated by a relay connected with electrodes which sense the fluid level in the tank.

The advantages of a single pump and a control valve, as contrasted with two separate pumps, are obvious. But utilization of one pump to perform the two functions of circulation and refill was not new. Similarly, control valves, check valves, and electrical relays are old in the art. In fact, neither party contends that any of the elements in the patented system are new. Rather, Dole Valve maintains that the single pump concept has not previously been applied to soda water dispensing systems.

## II. Validity

■ Federal legislation restricts patents to subjects which are neither obvious nor anticipated by previous patents. 35 U.S.C. §§ 102 & 103. While Dole Valve relies heavily upon the statutory presumption of patent validity, 35 U.S.C. § 282, the Patent Office failed to consider much of the prior art.[4] The presumption is therefore not applicable. See T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir. 1966); Novo Industrial Corp. v. Standard Screw Co., 374 F. 2d 824, 827 (7th Cir. 1967).

### A. Obviousness

In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court recently indicated that obviousness should be analyzed in terms of the prior art as of the time the invention was conceived. See also Gass v. Montgomery Ward & Co., 387 F.2d 129, 132 (7th Cir. 1967).

■ The most relevant prior art consists of two German patents, Laubach 288,219 and Laubach 280,997, issued in 1915 and 1914, respectively.[5] They describe a system for storing, circulating and replenishing carbonated water. Specifically, each patent explains how a single pump may perform the dual functions of circulation and water refill.[6] See diagrams 3 & 4, appendix B.

Referring to diagram 3 (patent '219), the water intake pipe and the circulation path join at the structure labeled "I." When the storage tank A is adequately filled, the continuously operating pump

---

4. Only the two earlier Kromer patents were cited, thus overlooking the Laubach and other patents discussed *infra* pages 6–7 & note 13.

5. Dole Valve seeks to have these patents construed narrowly because they are foreign. When the invention is clearly expressed in a foreign patent, however, it is treated the same as a domestic one. See 35 U.S.C. § 102; Amphenol Corp. v. General Time Corp., 397 F.2d 431, 437 (7th Cir. 1968).

6. As applied to this case, the major difference between the patents is that '997 uses a float-actuated three-way valve to determine whether the pump's suction will draw fresh water or will recirculate the fluid, while '219 combines a float-actuated control valve and a check valve to make this selection. The distinction is conceptually insignificant, except insofar as it shows the interchangeability of such valves.

D draws water from the tank through the opening E, up the pipe i, through the juncture I, and then past the pump and back into the tank. On the other hand, when the water level in the tank is low, the float $F\&F_1$ drops, thus closing the opening E and preventing carbonated fluid from leaving the tank. Since the pump continues to create suction, fresh water is then drawn into the system, entering through pipe G, passing the juncture I and the pump, and then entering the tank. When the tank is refilled, the float $F\&F_1$ rises, thus allowing carbonated fluid to be drawn into pipe i at opening E by the pump's suction. The pump then circulates the carbonated fluid as described above; when such circulation occurs, fresh water is prevented from entering the system by the check valve, labeled o, which is located at the bottom of juncture I.

Similarly, the pump in '997 performs both the circulation and refill functions. Fresh water enters pipe G, passes through the three-way valve which is shaded in diagram 4 (appendix B) by following the arrows indicating a white pathway $C_2$ past juncture I. It then proceeds through the pump and into the tank as above. The circulation path is also similar to that in '219, commencing at the opening in the side of the tank, passing through the left ventricle of the three-way valve (shown by arrows within the narrowly depicted passageway v), and then proceeding through the pump and back into the tank.[7]

The two preceding patents [8] demonstrate that the instant Kromer patent contributed very little, if anything, to the art. The witnesses' testimony at trial confirmed this conclusion. Plaintiff produced one expert, Dr. Zeigler. Four experts testified on behalf of Perfection, Dr. Thodos, Mr. Schottler, Mr. Richards and Mr. Strenger. Although Dole Valve's counsel attempted to limit the field of relevant art to the beverage dispensing field, thus undercutting the expertise of defendant's witnesses, the more general field of fluid flow is the appropriate area for expert testimony.[9] Perfection's experts established that, at the time of Kromer's invention,[10] his contribution was obvious to one skilled in the art. Specifically, the level of ordinary skill at that time included an awareness of (1) the various elements comprising the Atlas system, such as the carbonating, refrigerating, level sensing, and circulating means, and (2) a knowledge of how to utilize suction pumps, control valves, check valves, and three-way valves in combination with one another. Moreover, unification of the intake and circulation lines, with concomitant replacement of two pumps by a single pump and a control valve was obvious to one skilled in the art. This is plainly demonstrated by the fact that Mr. Strenger, without any knowledge of the Kromer patent, converted a two-pump system similar to the Atlas into the Strenger one-pump system now challenged by the plaintiff.

But Dole Valve emphasizes the language of the claims in issue. The heart

---

7. Unfortunately, the circulation path is difficult to visualize from diagram 4 because the internal mechanism operating the three-way valve is only depicted in one of its positions, the one which allows fresh water to enter.

8. In addition, Schmidt patent 1,611,321 describes a system for storing, refrigerating and dispensing carbonated water. Specifically, it discloses two ways in which the fluid maybe circulated and replenished. A two-pump system, conceptually similar to the Atlas device, may be employed (see diagram 4A, appendix B); alternatively, only a single

pump is required if the pressure at the fresh water source is greater than the fluid pressure within the beverage dispensing system (see diagram 4B, appendix B).

9. As relevant to the instant dispute, neither the principles underlying beverage dispensing systems generally nor those applicable to carbonated water dispensing devices differ significantly from ordinary fluid flow considerations.

10. *Compare* Walt Disney Productions v. Fred A. Niles Communications Center, Inc., 369 F.2d 230, 235 (7th Cir. 1966).

of the invention is put forth in claim 2,[11] which describes a beverage system with eight principal parts: a storage receptacle, a remote dispensing faucet, a conduit connecting the faucet and the receptacle, a continuously operating pump, a valve upstream of the pump, water level sensing means for triggering the valve, a source of fresh water, and a pipe leading from the source to the circulating conduit. Claim 3 further specifies the relative location of the parts, while claim 4 defines the valve as a normally open solenoid valve. Claim 5 specifies that the water level sensing means consist of (1) contact breaker means with electrodes in the water, and (2) a relay connecting the breakers and the valve. Finally, claim 6 itemizes refrigerating means and a source of pressurized carbon dioxide for carbonating the water.

To distinguish the prior art, plaintiff emphasizes the details of these claims. For example, the Laubach patents allegedly do not disclose a refrigerating unit or a conduit connecting the faucet and the tank. Similarly, a normally open solenoid valve is not depicted.[12] As indicated above, however, none of these asserted differences is relevant to Kromer's invention. The Tuckaway system attempted to explain how a single pump could perform the functions of circulating and refilling. All other aspects of the system were admittedly old.[13]

## B. Anticipation

Plaintiff stresses the narrow confines of patent anticipation, citing *Nordberg Mfg. Co. v. Woolery Machine Co.*, 79 F.2d 685 (7th Cir. 1935), and *Copease Mfg. Co. v. American Photocopy Equipment Co.*, 298 F.2d 772 (1961). As recently stated by the Seventh Circuit, however:

"As a rule, in order to have anticipation, all of the elements of the patented device or their equivalents must be found in a single prior device. [Citations.] But it is sufficient if the general aspects are the same and the difference in minor matters is only such

---

11. Specifically, that claim covers:
"A beverage system for carbonating, refrigerating, storing and dispensing water comprising:
a storage receptacle containing water and an atmosphere of carbon dioxide above the water;
a dispensing faucet remote from the receptacle;
conduit means connecting the faucet and the receptacle and providing paths to and from the faucet in a closed pressurized circuit;
continuously operating pump means connected in the conduit means for forcing water in one direction over the circuit;
a valve connected in the conduit means rearwardly of the pump means with respect to the direction of flow of water in the circuit;
water level sensing means disposed in the receptacle and connected to the valve for triggering the same to open and closed positions when the water level in the receptacle reaches predetermined upper and lower limits, respectively;
a source of pressurized fresh water;
a pipe line leading from the source and connected to the conduit means between the pump means and the valve;

and a check valve disposed in said pipe line for effecting the flow of fresh water therethrough and thence to the conduit means when the water pressure in the conduit means falls to predetermined lower level."

12. Moreover, plaintiff contends that Schmidt does not contain "remote" faucets or water level sensing means disposed "in" the tank.

13. Specifically, the earlier Atlas system, patented by Kromer himself, included every element except the single pump concept. See diagram 1, appendix A.
In addition, Thompson patent 2,334,783 illustrated the use of an electrically actuated solenoid valve which regulates the flow of fresh water into a carbonating beverage system. Similarly, Iannelli patent 2,782,016 discloses two level-sensing electrodes connected to a relay so as to actuate a solenoid valve in the fresh water line.
In Coletti patent 2,597,293, a system for supplying refrigerated drinking water to remote faucets, displays all of these routine elements of the Tuckaway device, as does the Fleming patent 920,559.

as would suggest itself to one of ordinary skill in the art."

Amphenol Corp. v. General Time Corp., 397 F.2d 431, 438 (1968). Thus, for anticipation to be present, each element of a combination patent need not be enumerated in an earlier patent; rather, the "invention" must be fully disclosed and the differing details obvious to one skilled in the art. Here, the invention consists of using a pump and a valve to replace two pumps. As described above, the Laubach patents fully disclose this invention; one could practice it without need of further experimentation. See Borg-Warner Corp. v. Mall Tool Corp., 220 F.2d 803, 805 (7th Cir. 1955). The elements omitted from these earlier patents, such as contact breaker means with electrodes, were obvious to one ordinarily skilled in the art at the time of Kromer's invention.

### III. Infringement

Three devices sold by Perfection are charged with infringement, the Richards system, the Strenger system, and the Dunham-Bush RB system. While all utilize Kromer's single pump concept, the Richards sensing means are triggered at a singe water level, instead of the dual-level electrodes used in the patent.

Rather than water-level sensing means which trigger the control valve at upper and lower levels in the tank, the Richards system employs an orifice probe which senses a single level. See diagram 5, appendix C. Inertia in the valve operation and relay mechanism cause a delayed reaction time from sensing to actual valve operation; however, this overshoot is irrelevant to the patent's claims, which specify two level triggering. The Richards sensing means employ single level triggering.

Naturally, Dole Valve emphasizes that details such as the operation of the sensing means are irrelevant to Kromer's concept, the use of a single pump. But plaintiff is estopped to assert this contention. See Skirow v. Roberts Colonial House, Inc., 361 F.2d 388 (7th Cir. 1966); Kennatrack Corp. v. Stanley Works, 314 F.2d 164 (7th Cir. 1963). In prosecution of the patent before the Patent Office, Kromer canceled an original claim which called for "water level sensing means" for replenishment at "a predetermined lower limit." [14] Instead, he accepted the present claims which are limited to two fluid levels.

With the Strenger and Dunham-Bush RB systems, Perfection attempts to invoke the file wrapper estoppel doctrine again. These two systems use a three-way solenoid valve rather than a control valve to regulate circulation flow and a check valve for make-up flow. [15] Such a three-way valve is equivalent to the patent's valves.

Nevertheless, defendant asserts that Dole Valve is prohibited from using the doctrine of equivalents because the Patent Office rejected a claim covering "valve means" generally. Kromer subsequently accepted the present description of the two valves. While equivalents may not be employed to enlarge patent claims to include areas explicitly abandoned before the Patent Office, a patent covers all devices which may fairly be called the equivalent of the ones described. Compare Kennatrack Corp. v. Stanley Works, 314 F.2d 164, 167 (7th Cir. 1963); Dixie Cup Co. v. Paper Container Mfg. Co., 169 F.2d 645, 648 (7th Cir. 1948). The Strenger and Dunham-Bush RB systems therefore infringe the instant patent.

14. The claim contained no reference to a second water level.

15. The three-way valve may assume one of two positions, either (1) closing the fresh water vent and allowing water to circulate past the faucets, or (2) opening the fresh water vent, blocking recirculation of carbonated fluid, and drawing in fresh liquid.

## IV. Conclusion [16]

At the time of Kromer's invention, the single pump concept embodied in his patent was obvious to one ordinarily skilled in the art, as indicated by expert testimony at trial and by analysis of prior relevant patents. Moreover, previous patents anticipated the invention, except for minor details which were obvious from the prior art.

Compared with the contested patent, the Strenger system and the Dunham-Bush RB system employ equivalent means, operate in the same manner, and achieve the identical result. They therefore infringe patent claims 2 through 6. Since the Richards system utilizes a single level sensing orifice, however, it is protected from the asserted claims of infringement (2 and 3).

Defendant will prepare and submit an appropriate judgment order within five days.

Diagram I, Appendix A.

16. Perfection has also requested reasonable attorney fees under 35 U.S.C. § 285, alleging that this is an exceptional case. I have reserved judgment on this issue until after trial of the antitrust counterclaim. *Compare* Laufenberg, Inc. v. Goldblatt Bros., Inc., 187 F.2d 823 (7th Cir. 1951). At that time, the parties should consider whether plaintiff exercised good faith in commencing and prosecuting this lawsuit, not whether Kromer misled the Patent Office. See generally P & D Sales & Mfg. Co. v. Winter, 334 F.2d 830, 836 (7th Cir. 1964).

Diagram 2, Appendix A.

check valve

CONTROL VALVE

juncture of circulation
conduit and intake
pipe

Pump

Diagram 3, Appendix B.

juncture of circulation conduit and intake pipe.

circulation conduit

tank

fresh water

float

opening in side of tank

410

Diagram 4A, Appendix B.

circulation conduit

circulation conduit

juncture of circulation
conduit and intake pipe

intake
pump

fresh water
pipe

circulation conduit

circulation
pump

Fig. I.

412

Diagram 5, Appendix C.

Richards system level
sensing orifice.

trigger
level

fluid